**STATE EX REL. WRIGHT, Plaintiff-Appellee, v MORRISON, ET AL., Defendants-Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6743. Decided February 17th, 1947.

470

Wm. Jerome Kuertz, Cincinnati, and Harold M. Baron, Cincinnati, for plaintiff-appellee.

John D. Ellis, Cincinnati, and Edward F. Alexander, Cincinnati, for defendants-appellants.

## OPINION

By MATTHEWS, PJ.:

This is an appeal from a judgment awarding a writ of mandamus ordering the Board of Trustees of the City of Cincinnati Retirement System to pay to the relatrix a pension based upon the court's finding that her husband's death on June 5th, 1941 was "the natural and proximate result of personal injuries, accidentally sustained by him on October 11th, 1934, while in the performance of his duties as Assistant Engineer of the Sewer Department of the defendant, the City of Cincinnati, and without wilful negligence on his part."

At the outset, we take notice of the motion of the appellee to dismiss the appeal on the ground that the notice of appeal was not filed within twenty days of the overruling of the motion for a new trial.

An examination of the transcript discloses that the trial was concluded on May 15th, 1946, and on June 19th, 1946, there was placed upon the journal the "Conclusions of Fact and of Law" in the preamble to which it is recited that at the conclusion of the trial the court had announced "in open court its decision in favor of the relatrix" and that "thereupon the City Solicitor upon behalf of the defendants orally requested the court to state in writing its conclusions of fact found separately from its conclusions of law," and it was because of this request that the findings were made. There then followed very detailed findings of fact and conclusions of law ending with the conclusion of law that "a peremptory writ of mandamus should issue as prayed for in said amended petition herein."

On June 28th, 1946, the defendants filed a motion to set aside these findings and for a new trial. This motion was overruled on September 23rd, 1946, and, on the same day, by separate entry a "Judgment Granting Writ of Mandamus" was journalized. On September 26th, 1946, a motion was filed to set aside this judgment and for a new trial. This was overruled on October 1st, 1946.

The notice of appeal was filed on October 10th, 1946.

It is urged that the entry of June 19th, 1946 is a judgment and that as the motion to set it aside and for a new trial was not filed within three days thereafter it did not have the effect of postponing the running of the time within which the notice of appeal could be filed.

We do not stop to consider the effect of the pendency of that motion upon the running of the time for an appeal, because we are clearly of the opinion that the entry of June

19th, 1946, is just what the court in the entry said it was, that is, a separate finding of facts and conclusions of law. That was what the City Solicitor requested and the Court's action, as expressly stated in the journal, was a compliance with that request. The fact that on the same day that the motion to set it aside was overruled a "Judgment Granting Writ of Mandamus" bearing the endorsed approval of relatrix's counsel was journalized shows that they did not consider that a judgment had already been entered.

The final conclusion of law, as found by the Court on June 19th, 1946, was that a "peremptory writ of mandamus should issue" and counsel cites **State, ex rel. v Brookes, 142 Oh St 107**, as authority for treating such an entry as a judgment. We think the case is inapplicable. In that case, there was no request for a separate finding of facts and conclusions of law. There was no caption styling the entry as a finding of facts and law. There was no statement by the court in the journal entry or otherwise that what he was doing was making a finding of facts and law. In that case there was no formal judgment awarding the writ based on any separate finding of facts and conclusions of law. Furthermore, the language is entirely different. In the conclusions of law in the case at bar the language is that a peremptory writ "should issue" whereas in State, ex rel. v Brookes, supra, the language is "peremptory writ of mandamus **allowed** and defendant **ordered** to grant relator the right to participate in the police relief fund" etc.

In the case at bar there was no awarding of the writ in the entry of June 19th, 1946. It was a finding that he was entitled to the writ, not that the court ordered the issuance of the writ. In State, ex rel. v Brookes, supra, the writ was allowed in express terms.

We find that the notice of appeal was filed within twenty days of the judgment appealed from, and the jurisdiction of this Court properly invoked.

The "Claim and Proofs of Death" is in the form of a questionnaire to be filled in and executed under oath by the claimant (in this case, the widow), the physician who attended the employee in his last sickness, the undertaker, and a disinterested friend of the deceased. This form carried some printed instructions as to the facts which it was intended to be developed and as to the manner of its execution.

One of the provisions of the ordinances introduced provided that the Board of Trustees should consist of the mayor, the city manager, the chairman of the civil service commission, and the chairman of the finance committee of council as

ex officio members, and three elected by the members of the system, one of which should be from the police department, one from the fire department, and one from the other departments.

Another provision was that the Board "shall from time to time establish rules and regulations for the administration of the funds created by this ordinance and for the transaction of its business."

In view of the fact that the cause of death, to-wit: coronary occlusion, was attributed to an injury that had been received more than six years prior to death, evidence was introduced tending to establish this chain of causation as natural and proximate. This evidence included the testimony of two physicians, who, in answer to a hypothetical question, based on data assembled from other testimony, gave it as their opinion that the coronary occlusion from which Wright died was the natural and direct result of the injury which he had received more than six years before his death.

The foregoing outline of the facts is sufficient, we think, to indicate the disposition which should be made of this appeal.

(1) Disposing of the relatrix's claim upon the evidence assembled in another case and the proof furnished through the questionnaire form provided by the Board, stripped from the proceeding the necessary elements to give to the ruling a binding effect. It lacked due process. Speaking of the constitutional requirements of due process as applied to procedure before administrative boards, affecting private rights, the Supreme Court of the United States in Ohio Bell Telephone Co. v Commission, 301 U. S., 292, at 304 and 305, said:

"Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' (St. Joseph Stock Yards Co. v United States, 298 U. S. 38, 73) of a fair and open hearing be maintained in its integrity. Morgan v United States, 298 U. S., 468, 480, 481; Interstate Commerce Comm'n v Louisville & N. R. Co., supra. The right to such a hearing is one of 'the rudiments of fair play' (Chicago, M. & St. P. Ry. Co. v Polt, 232 U. S. 165, 168) assured to every litigant by the Fourteenth Amendment as a minimal requirement. West Ohio Gas Co. v Public Utilities Comm'n (No. 1), (No. 2), supra; Brinkerhoff-Faris Co. v Hill, 281 U. S. 673, 682. Cf. Norwegian Nitrogen Co. v United States, supra.

474

There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when the minimal requirement has been neglected or ignored."

On this subject, it is said in 12 Am. Jur., 303, that:

"The proceeding or hearing requisite to due process must be appropriate and such as is practicable and reasonable in the particular case. It must be an orderly proceeding, in which one sought to be affected has an opportunity to be heard and to defend, enforce, and protect his rights.

A full hearing is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law, of the step asked to be taken.

There is no hearing when the party does not know what evidence is offered or considered and is not given an opportunity to test, explain, or refute."

In the absence of rules and regulations promulgated by the Board, the relatrix had no means of knowing what she was required to do in order to assert her right to a full and fair hearing of the issue of fact as to whether the coronary occlusion which caused her husband's death was caused naturally and proximately by the injury which he had sustained in 1934 in the course of his duty as a municipal employee. Having complied with all the known requirements of the Board, the relatrix cannot be precluded by delay on her part in demanding that the Board promulgate other rules under which she could obtain the hearing to which she was entitled under the due process provision of the Ohio Constitution and the 14th Amendment of the United States Constitution.

We have no difficulty in reaching the conclusion that the rejection of the relatrix's claim by the Board under the circumstances was void and of no effect.

(2) Having reached the conclusion that the right to have her claim to a pension determined upon a full and fair hearing, the question remains as to whether the failure of the proceedings before the Board to conform to a full and fair hearing has the effect of transferring the jurisdiction from the Board to the judiciary to be invoked by a proceeding in mandamus.

The relatrix claims that it does and the trial court heard

the case on that assumption and awarded a pension to her and ordered the defendants to pay her. To do this, the Court was required to, and did decide, on evidence from which conflicting inferences could be drawn, the issue of fact as to whether the cause of death was the natural and proximate result of an injury received in the course of the decedent's duty as an employee. It certainly was not required to draw this inference. Expert witnesses called by the relatrix gave it as their opinion that the coronary occlusion was the natural and proximate result of the injuries of 1934—but the trier of the facts was not bound to adopt their opinion. A contrary conclusion based on data in evidence would not be unreasonable.

The relatrix relies upon several cases as justification for the court's action in assuming jurisdiction to decide this issue of fact. Perhaps the case chiefly relied on is **State, ex rel. Dieckroegger v Conners, et al., 122 Oh St 359**, but that case was disposed of on demurrer to the petition and, of course, presented no issue of fact. The sole issue was one of law as to the meaning of statutes and the rules of the pension board.

That no issue of fact was involved in the other cases relied on is equally clear. **State, ex rel. v Conners, 123 Oh St 670, and Shinnick, etc. v State, ex rel., 101 Oh St 246**, were disposed of on demurrer. **State, ex rel. v Turnbull, Mayor, etc., 132 Oh St 235, Dragonette v Brander, 135 Oh St 12**, and **State, ex rel. v Carter, 111 Oh St 526**, were heard on the pleadings and agreed statement of facts. In **State, ex rel. Delaney v Holmes, 5 Oh Ap 1**, the question was whether the rules empowered the trustees to revoke a pension. There was no dispute about the rules. The question was whether the trustees were following them and that involved only a matter of interpretation. Likewise, in **Mell, et al. v State, ex rel., 130 Oh St 306**, the only question presented related to the rules of the board and the effect of a change of rule.

Robert E. Wright had been an employee of the City of Cincinnati for about 27 years and was so employed at the time of his death on June 5th, 1941, and was a member of the Retirement System of said City and was entitled to the benefits as provided in the ordinance, by which it was established and administered. One of the provisions required the employees to pay from their salaries a certain amount into its Retirement Fund. This Wright did.

It is undisputed that on October 11th, 1934, Wright was severely injured while in the actual performance of his duties and that such injuries were accidentally received, without wil-

ful negligence on his part. While there is evidence that he never completely recovered from these injuries and that they eventually caused his death, he did continue as an employee of the City until November 26th, 1940, with only a few short leaves on account of sickness shown in his record. On that date, he was taken to a hospital and was never able thereafter to perform his duties as an employee, although he tried for a day or so to do work not requiring any great physical activity, to which he was transferred because of his condition.

On May 6th, 1941, Wright made application for disability retirement allowance in accordance with a provision of the ordinance authorizing such retirement and allowance when an employee had become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place without wilful negligence on the part of the employee. In making this application Wright attributed his incapacity to the injuries he had received on October 11th, 1934. The Board of Trustees, through its benefit committee and medical examiner made an investigation and reached the conclusion that Wright's incapacity was not attributable to the injuries received by him on October 11th, 1934, and on June 3rd, 1941, approved and confirmed the report of its committee that the application be denied. Two days thereafter, Wright died.

On May 27th, 1944, the relatrix filed her application with the Board of Trustees for accidental death benefits which is greater than "Ordinary" death benefit as defined in Sections 20-45 C and 20-45 D of the ordinance, which we quote:

"Sec. 20-45c. Ordinary death benefit. Upon the receipt of proper proofs by the board of the death of a member in service which is not the result of an accident in the actual performance of duty, as defined in Section 20-45d, there shall be paid to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the board, or if there be no such designated person then to his legal representative:

(a) His accumulated contributions.

(b) A lump sum death benefit equal to fifty per cent of the compensation received by him during the twelve months immediately preceding death. If, during all or part of said twelve months, he is prevented by illness from receiving compensation, an equivalent preceding period of compensated time

shall be added and the death benefit payment shall be calculated on the adjusted basis. For the case of members employed on an hourly, daily, or other irregular basis, the board may adopt rules for the payment of the lump sum death benefit on the basis of fifty per cent of what the board may determine to be an average year's compensation for the deceased basing such average on a period of not to exceed five years prior to his death."

"Sec. 20-45d. Accidental death benefit. If upon the receipt of proper proofs by the board of the death of a member in service indicating that such death was the natural and proximate result of an accident occurring at some definite time and place while the member was in the actual performance of duty the board shall decide that the death was the result of an accident in the performance of duty and not caused by wilful negligence on the part of the member, there shall be paid:

(a) The amount of his accumulated contributions to such person having an insurable interest in his life as he shall have nominated by written designation duly executed and filed with the board, or if there be no such designated person then to his legal representative and

(b) A pension of one-half of the average final compensation of such employe to be paid to his widow, if he leaves a widow, to continue during her widowhood; or

(c) If there be no widow, or if the widow dies or remarries before the youngest child of such deceased member shall have attained the age of eighteen, then to his child or children, divided in such manner as the board in its discretion shall determine to continue as a joint and survivorship pension for the benefit of the child or children under such age until every child dies or attains said age; or

(d) If there be no widow or children under the age of eighteen years surviving such deceased member, then to his dependent father or dependent mother as the deceased member shall have nominated by written designation duly executed and filed with the board; or

(e) If there be no such nomination, then to his dependent father or to his dependent mother as the board in its discretion shall direct to continue for life."

The Board of Trustees rejected the application for accidental death benefit, but allowed her ordinary death benefit in the sum of $1936.84, in payment of his accumulated contri-

butions with interest and $1590, representing one-half of a year's salary. On June 7th, 1944, the relatrix was notified of the action of the Board, and the checks for the amounts of the award sent to her shortly thereafter. She has not cashed these checks.

It is conceded that there was no formal hearing of this application of which prior notice had been given, and also that the ruling rejecting the application was based solely on the report of the benefit committee submitted on the application of Wright in his lifetime and an oral report made by the medical director that Wright's incapacity was not attributable to the injuries received by him on October 11th, 1934. It is also admitted that the Board of Trustees had no rule or rules providing for hearings of applications or for notice of such hearings or regulating the proceedings on the filing of applications. The Board did have printed proofs of death forms, and furnished them to anyone desiring to make application for a pension.

In the interval between Wright's death and the filing of the application by the relatrix, she had applied to the Industrial Commission of Ohio for compensation as his widow and on March 6th, 1944 an award of $2,000.00 and amount of funeral, medical and hospital bills was made. This of course, was based on a finding that death had resulted from an injury received in the course of employment.

Those are the admitted facts. The defendants have consistently denied that Wright's death was the natural and direct result of his injuries of October 11th, 1934.

Evidence in proof of these facts which we have described as admitted was introduced at the trial of this case in the Common Pleas Court. There was also introduced the "Claims and Proofs of Death" which had been filed with the Board of Trustees and also copies of the ordinances creating the retirement system and providing for its administration.

It is manifest that none of these cases is an authority for the proposition that a disputed issue of fact upon which the right to a pension depends can be determined in a mandamus proceeding against a board of trustees to which the issue has never been presented, or which has decided adversely in good faith upon substantial evidence, even though such adverse finding, because of some procedural defect, is not binding.

Now, reverting to that part of the rules relating to "Accidental Death Benefit" for which the relatrix applied, we find that it provides that "If upon the receipt of proper proofs, ——————— the Board shall decide that the death was the

result of an accident in the performance of duty and not caused by wilful negligence on the part of the member, there shall be paid" etc. Now who is to decide what are proper proofs? And who is to decide whether the death was the result of an accident on the performance of duty? By necessary implication as to the first and by express statement as to the second, that duty is imposed upon the Board. And unless the proofs submitted by the claimant are to be accepted as· conclusive, the decision involves the exercise of judgment and discretion. It is not claimed that the Board is so bound. Such an interpretation would expose the pension fund to the uncontrolled depredations of the predatory.

"It is well settled that the lawful discretion vested in an individual, officer, or corporation cannot be destroyed, controlled, or limited by the writ of mandamus." **25 O. Jur. 1003.**

We are of the opinion that the principles applied in the case of **Karb, et al. v State, 54 Oh St 383,** are equally applicable to the facts of the case at bar. The cases are very similar as is indicated by these quotations from the syllabus:

"Under section 17 of the act granting pensions to members of the fire department, 89 O. L. 259, the board of trustees of the pension fund is charged with the duty of determining whether the disability of the claimant was caused in, or induced by, the actual performance of the duties of his position as such member, and such determination, when made in good faith, is final.

"If the board of trustees refuses, upon proper application, to make such determination, it can be compelled by a mandamus to do so; but if the result of such determination is against the applicant, the board cannot be compelled to further act on the case.

"In a case where the Board of trustees has not determined that the alleged disability of the applicant was 'caused in, or induced by, the actual performance of the duties of his position as such member,' and no order has been made by the board for his examination by such medical officer, and there has been no examination under any such order, it is error for a court to grant a peremptory writ of mandamus against such board, commanding the admission of such applicant to the

benefits of the pension fund, even though the chief engineer of the fire department may have relieved such applicant from actual service at fires, and recommended him to the board for a pension.

"In such case the mandamus should command the performance of the first act which is left unperformed by those administering the statute, and as to the performance of which they have no discretion."

Karb v State, supra, was followed in **Roth v Trustees, 62 Oh St 659.**

And in **State, ex rel. Dawn v Kyle, 75 Oh Ap 30**, this Court has occasion to apply the same principle. We held:

"A writ of mandamus to compel the board of trustees of a police relief fund to increase a retirement allowance will not lie where it is not shown that refusal to make the increase was made after a hearing provided for in such cases by the rules of such board."

In the light of what we have said, we think it clear that failure to accord to the relatrix an adequate hearing, at which her claim was denied, cannot be treated as the equivalent of an affirmative finding in her favor. The Board has not exercised its discretion after a full and fair hearing. Until it accords her such a hearing and makes an affirmative finding in her favor, or arbitrarily, and unreasonably, and in bad faith refuses to do so, when in actual fact she is entitled, does a non-discretionary duty arise to pay her the pension?

For these reasons, we are of the opinion that the judgment of the trial court should be reversed, and a judgment rendered awarding a writ, commanding the members of the Board of Trustees to perform their duty to accord to the relatrix a hearing with full opportunity to offer any evidence she may have in proof of her claim, and thereafter render a fair and judicious decision upon the merits of her claim.

For these reasons, the judgment of the trial court is reversed and a judgment rendered by this Court in accordance with this opinion.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.