GIBRALTAR MAUSOLEUM CORPORATION, APPELLANT, *v.* CITY OF CINCINNATI, [CINCINNATI FIRE PREVENTION BOARD OF APPEALS], APPELLEE.

(No. C-800094—Decided March 4, 1981.)

Messrs. *Sheldon & Associates* and *Mr. Henry E. Sheldon, II,* for appellant.

*Mr. Richard A. Castellini,* city solicitor, and *Mr. Hugh O. Frost, II,* for appellee.

PALMER, J. Plaintiff-appellant, Gibraltar Mausoleum Corporation, appeals from a judgment of the Court of Common Pleas of Hamilton County affirming the decision of the Cincinnati Fire Prevention Board of Appeals (Board) which had denied appellant's request for a variance from the provisions of Section CFPC-80-03(B) of the Cincinnati Fire Prevention Code, requiring all buildings and structures to be located not more than 400 feet from a fire hydrant. The factual basis for appellant's request for a variance is relatively simple. Appellant, generally engaged in the business of building mausoleums, contracted with the Vine Street Hill Cemetery to construct a mausoleum, and began selling crypts to cover the costs of initial construction. In order to obtain a building permit, plans of the proposed construction had to be submitted to the city of Cincinnati. Since the plans did not show a hydrant within 400 feet of the proposed structure, the building permit was refused. Appellant, anxious to get on with the construction, was advised by the Fire Department that it could either have its plans rejected or it could show a hydrant on the plans, obtain the permit, and appeal the hydrant requirement to the Board. Appellant opted for the latter alternative, began construction, and appealed to the Board.

At the subsequent hearing before the Board, a five-member panel, appellant's project manager appeared and presented evidence in support of its contention that the fire hydrant requirement would impose undue financial hardship upon appellant and the public, that use of the structure by the public would be on a very limited basis, and that the structure was almost invulnerable to fire. Further, appellant presented evidence that the addi-

tional costs of installing a fire hydrant would exceed $20,000 — a cost which could make the price of the remaining, unsold crypts prohibitive to the general public. In addition, appellant presented evidence concerning the materials to be used in the structure, such as concrete, granite, marble, stone and laminated wood, as well as fire-resistant carpeting and wood paneling, materials which, although not making the building "fireproof," did demonstrate that the mausoleum structure presented neither a likely source nor any fuel for a fire. Finally, appellant presented evidence to the effect that the number of people present in the structure at any given time would be so few in number and for so short a time that the danger to citizens was minimal, especially in light of the structure's several points of egress. Upon questioning by the panel, appellant's representative did admit that a fire hydrant would possibly better protect the crypts, but asserted that the degree of higher protection was slight, given the cemetery's spacious driveways which could easily accommodate emergency vehicles in case of fire.

At the conclusion of the hearing, the Board issued findings of fact consistent with those set out above, but nevertheless denied the variance on the grounds that appellant had failed to demonstrate that a valid hardship existed, presumably because appellant failed to factor in the cost of the hydrant to the initial crypt purchasers, thus creating, by its own marketing negligence, the hardship of which it now complained. In the notice of its determination, however, the city incorrectly informed appellant that it had 30 days in which to appeal the decision to the Court of Common Pleas, when in fact it had only 10 days in which to perfect any such appeal under R.C. 2505.07(B).

In an effort to remedy the error and remove any prejudice created by the misinformation, the Board granted appellant a rehearing, and invited appellant to present, at this time, "* * * any additional information to substantiate your appeal." At this rehearing, appellant was represented, for the first time, by counsel and was prepared to present its case again in a more organized fashion and with additional testimonial and physical evidence from additional witnesses. However, the record clearly reveals that the Board was not interested in receiving supplementary evidence on issues raised in the earlier hearing, but was only interested in receiving evidence on any new issues which appellant wished to present in support of its request for a variance. Shortly after the rehearing began, and during counsel's direct examination of appellant's general manager, the following conversation occurred:

"Chairman: As chairman, could I interrupt you just a minute. Not that I want to chop off your presentation or anything, but we went through pretty much the construction the last time and the contents of this and quality of structure and so forth. And the decision of the Board was based on not being a hardship and also enforcing the National Fire Code, and that basically was the reason for the decision.

"Counsel: Alright, let me turn to something else that was not testified to, alright?

"Member: Could I interrupt for just a minute?

"Counsel: Sure.

"Member: Unfortunately, some of us are still faced with the job of making a living. I happen to be one. I didn't know it was going to take this long. I heard all of this last time. I came to my conclusion then, and I still feel the same way. I have written out my opinion. I'll give it to anybody that is interested in it. And I have to go."

With that, one member removed himself from the rehearing, despite counsel's intention to move on to matters not discussed in the first hearing. Again, throughout the rehearing, appellant was consistently denied the opportunity to

present relevant and credible evidence bearing on the issues before the Board. The following excerpts from the transcript of the rehearing are illustrative of this:

"Chairman: * * * All we're doing is hearing what your appeal is, now, and that's that. Really, at this point we're kind of going over things. We have brought out some things that wasn't [*sic*] discussed at the first hearing, but.

"Witness: Is the first hearing still a matter of record?

"Chairman: A matter of record?

"Witness: Well, you've been bringing up that it came up in the last meeting. I might have been under the wrong assumption when I came in here, but I felt that meeting was never really * * *

"Chairman: Well, that just can be cancelled out; the last meeting cancelled out as far as I'm concerned as far as the records go. But the only reason I brought that up as far as reference to what was said, you know, whether it would have any bearing on the decision or not. But I, in fact, brought this up. It's true I didn't mention that past hearing. This is, in order to, like we first started, like your legal advisor said, *we granted this rehearing in order to comply with this ten-day bit,* you know, because you went over the ten days. And, again, we also stated that *if there was any other evidence that you wanted to present that would possibly sway our minds and change our decision,* you know, and that's, what in fact we did here today. And after you leave the room, we'll discuss it and if we find any change, we'll give it to you. If not, you'll have the ten days." (Emphasis added.)

Shortly thereafter, the Board, including the absent member, rendered its decision adverse to appellant. Upon appeal to the Court of Common Pleas, the decision of the Board was affirmed, and appellant has filed this timely appeal, asserting generally that it was denied due process of law in several respects, the specifics of which we shall consider within each assignment of error.

In its first assignment of error, appellant contends that it was denied procedural due process in that the members of the Board had preconceived judgments about the merits of the claim before it and, therefore, appellant was denied an opportunity to a full and fair hearing before an impartial tribunal. The rule of law governing the issue raised by the appellant may be simply stated. Thus, it is axiomatic that a hearing conducted before a biased tribunal does not fulfill a requisite element of fundamental fairness that must predominate in all quasi-judicial proceedings. *Ward* v. *Village of Monroeville* (1972), 409 U.S. 57 [61 O.O.2d 292]; *Goldberg* v. *Kelly* (1970), 397 U.S. 254; *Ohio Bell Telephone Co.* v. *Pub. Util. Comm.* (1937), 301 U.S. 292; *State, ex rel. Wright,* v. *Morrison* (1947), 80 Ohio App. 135 [35 O.O. 479]. See, also, *Smith* v. *Mayfield Heights* (1955), 99 Ohio App. 501 [59 O.O. 339]. As the United States Supreme Court noted in *Ohio Bell, supra,* at pages 304-305:

"* * * Indeed, much that they [regulatory commissions] do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' * * * of a fair and open hearing be maintained in its integrity. * * * There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." (Citations omitted.)

Thus, courts must remain especially vigilant in insuring that administrative tribunals fairly exercise their expansive grants of discretion. The essence of due process dictates, at the very least, that an individual have an opportunity to be heard and to defend, enforce and protect his rights before an administrative body in an

orderly proceeding. *Ward, supra; Goldberg, supra; Morrison, supra.*

In applying this standard to the proceedings of the Board in the instant case, we conclude that appellant was denied due process of law at the rehearing of its appeal. In the first instance, it is apparent that, in the absence of any rules of procedure or other regulations promulgated by the Board, appellant had no means of knowing, with sufficient certainty, what it was required to do in order to assert its right to a full and fair hearing; and, moreover, the Board itself appeared confused as to its own function as an appellate tribunal, particularly as to whether it would hear new evidence on issues raised at the first hearing or whether it would hear only new evidence on new issues relevant to the ultimate question presented for its review. This is nowhere more evident than in the action taken by one Board member in delivering himself of his opinion and then excusing himself from the balance of the rehearing where, according to the Chairman, a review of the Board's previous action would be undertaken. If the purpose of the rehearing was to reopen the entire matter, then the Board member's prejudgment was error so clearly prejudicial to appellant's cause that it alone deprived appellant of the requisite due process. If, on the other hand, appellant was to be precluded from presenting new evidence at the rehearing on issues discussed at the previous hearing, then the Board, in granting the rehearing due to its own negligence, created in the appellant a right without a remedy, an unhappy circumstance for any individual faced with the task of dissuading members of an administrative tribunal from preconceived conclusions felt to be based upon an insufficient factual base. Where an administrative agency grants to an individual a right to be heard, it must provide a meaningful process for asserting that right. To do otherwise is to perpetrate a sham upon the affected party and the public generally. See *Baltimore & Ohio RR. Co.* v. *Pub. Util. Comm.* (1968), 16 Ohio St. 2d 60 [45 O.O.2d 335]; *Randolph* v. *First Baptist Church* (Hamilton C.P. 1954), 68 Ohio Law Abs. 100, 120 N.E. 2d 485.

The first assignment of error is well taken and accordingly sustained.

In its second and fourth assignments of error, appellant argues that it was denied due process because the Board's decision is not supported by reliable, probative and substantial evidence in the record; and, therefore, the hydrant requirement was unconstitutionally applied to it. As noted in our discussion and disposition of the first assignment of error, the procedural errors committed by the Board so affected the quality of evidence adduced at both hearings that any determination of the sufficiency of the evidence, or the applicability of the ordinance to appellant, must, in the interests of justice, await the creation of a proper record on remand.[1] We according-

---

[1] Although we have declined to address the merits of these assignments of error, we feel constrained to clarify a conflict apparent in the respective arguments before this court concerning the burdens of proof imposed upon the parties. It is clear that where the applicant seeks a variance from an order of the Fire Chief, the very nature of the action presupposes that the city has made out a prima facie case that the proposed construction violates a valid regulation of the Fire Code. Thus, in the instant case the applicant bears the burden of persuasion throughout the proceedings as well as the initial burden of producing, by competent evidence, that a variance is justified on the grounds of undue hardship and that granting the variance will not substantially increase the danger to the public. However, while the burden of persuasion remains with the party asserting the cause of action, the burden of production *may* shift to the Fire Chief to demonstrate the untrustworthiness, inaccuracy or incompleteness of the applicant's evidence. Whether or not this burden of pro-

ly overrule, as moot, the instant assignments of error.

In its third assignment of error, appellant contends that where a quasijudicial tribunal bases its decision upon unsworn testimony, in contravention of R.C. 2317.30, the evidence so accepted must be disregarded and, as a consequence, the decision of the Board is not supported by reliable, probative and substantial evidence in the record. *Arcaro Bros. Builders, Inc.,* v. *Zoning Bd. of Appeals* (1966), 7 Ohio St. 2d 32 [36 O.O.2d 18]. We disagree. The rule requiring sworn testimony before administrative tribunals exists for the benefit and protection of the individual asserting a right before the tribunal and may be waived, expressly or impliedly. *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41 [70 O.O.2d 123]; *Zurow* v. *Cleveland* (1978), 61 Ohio App. 2d 14 [15 O.O.3d 21]. At the rehearing before the Board, appellant did not object to the introduction of unsworn testimony, and thus waived its right to object to this procedure on appeal. The third assignment of error is without merit and accordingly overruled.

For these reasons, the judgment appealed from is reversed; the decision of the Board is vacated; and the cause remanded to that body for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

BLACK, P.J., and KLUSMEIER, J., concur.

---

duction will ever shift is wholly dependent upon the quantity and quality of the applicant's evidence in support of the variance. In any case, we cannot agree with appellant that simply because the Fire Chief presented no evidence on this point that it was entitled to a variance. Nor can we accept the city's contention that a burden — the burden of production — *never* shifts to the Fire Chief. It may, depending on the persuasiveness of the applicant's evidence. It is true that the Chief may decline to produce any evidence attacking the persuasiveness of the applicant's case, but he takes his chances that, in doing so, a subsequent refusal by the Board to grant the variance will be held, in view of the applicant's uncontradicted evidence, an abuse of discretion.