ABRAHAM et al., Appellees,

v.

WOOD COUNTY REGIONAL WATER AND SEWER DISTRICT, Appellant, et al.

[Cite as *Abraham v. Wood Cty. Regional Water & Sewer Dist.* (1995), 107 Ohio App.3d 773.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–95–017.

Decided Dec. 15, 1995.

774

*Brian L. Ballenger* and *Troy L. Moore,* for appellees.

*Daniel T. Spitler* and *John W. Fischer III,* for appellant.

———

SHERCK, Judge.

This is an appeal of an injunctive order issued by the Wood County Court of Common Pleas in a dispute involving water service to a group of Lake Township residents. Because we conclude that the trial court did not abuse its discretion in granting the injunction, we affirm.

Appellant, Wood County Regional Water and Sewer District,[1] was formed, pursuant to R.C. Chapter 6119, on January 1, 1994. Appellant inherited water-line project No. 234 from the Wood County Board of Commissioners. The preparatory work for this project had been completed; its purpose was to extend water service to a large portion of Lake Township in northeast Wood County.

Included in project No. 234 was an unincorporated area known as the Eastlawn Subdivision. Eastlawn Subdivision is divided into northern and southern sections by Woodville Road. Appellees are sixty-eight residents of north Eastlawn Subdivision.

On or about June 23, 1994, appellant sent to appellees and other property owners within the proposed service area a notice of a resolution of necessity and estimated tax assessment for each parcel to be served by the waterline. The notice instructed property owners who wished to object to the tentative assessment to file objections with appellant's board of trustees. The notice also informed property owners of two public meetings scheduled, "for discussion and information purposes only."

The informational meetings were well attended. Many of the property owners at these meetings objected to the project, citing no need for the waterline and complaining that assessment costs were too high. In response to these objections, appellant's executive director told those assembled that it was not the trustees' intention to force water on those without a need for it. According to the executive director, residents who objected to the line could make those objections known before an Assessment Equalization Board. In addition, the executive director explained that those in particular areas within the project who sought exclusion would be permitted to opt out of this project provided they constituted a majority. At least one witness testified that the executive director stated that the majority needed constituted "fifty-one percent."

Numerous residents within the project service area filed objections with appellant. In the north Eastlawn Subdivision, in addition to individual objections, a petition was circulated and signed by persons representing fifty-four households. The petition stated:

"We the people of the Eastlawn addition on the north side of Woodville Road are opposed and wish to be cut from waterline 234. We feel it is not necessary. It is overpriced and our present wells are very adequate."

On July 22, 1994, appellant, by ordinary mail, gave notice of a specific hearing time before the Assessment Equalization Board to those who had objected to the

1. Also named individually in the complaint by appellees, and nominally appellants herein, are the district trustees, its executive director and its secretary.

project. The notification letter stated that the equalization board would discuss *"only the amount of your tentative assessment. The necessity of the proposed waterline will not be discussed."* (Emphasis *sic.*)

At the equalization board hearings, which were set at ten-minute intervals, property owners who objected to the project as a whole were informed that the board only had authority to equalize assessments, not to end the project or exclude certain portions of land from the undertaking. At some of these hearings, only two of the three board members were present. In some instances, members of the equalization board told objecting property owners that their concerns would be referred to appellant's trustees. The trial court later found that this had not occurred.

The petition in opposition to the project was presented to the equalization board. The board, however, rejected consideration of the petition. It suggested that the circulators present the document to appellant's trustees. The petition, which ultimately contained sixty-one signatures, was delivered to the trustees at its August 1994 meeting. At that meeting, both appellant's executive director and the vice president of its board of trustees stated that an area could be removed from the project if a majority of its residents objected. Petition circulators noted that the area with which they were concerned did not include the parcels that line Woodville Road, along which the main water line would run to provide access to other outlying communities.

Prior to the September trustees' meeting, appellant's executive director and appellees contested each other's numerical analysis of the opposition to the project. The executive director, including Woodville Road parcels in his computations, determined that the petitioners represented only ninety-seven of two hundred six parcels in the north Eastlawn Subdivision. Thus, the director concluded that the subdivision should remain in the project, as there was no majority opposed to the project.

Appellees claimed that the executive director's computations were erroneous. Their calculations showed that the petitions represented one hundred five parcels, demonstrating a slight majority even when the Woodville Road area was included. According to appellees, when Woodville Road was excluded (the stated intent of the petitioners), the remaining parcels amounted to only one hundred sixty lots. According to the petitioners a clear majority of the parcel owners in the subdivision wanted out of the project. Even using the executive director's ninety-seven parcel figure, the parcel owners opposing inclusion equalled sixty-

one percent; using appellees' figures only, the majority figure equalled sixty-seven percent.[2]

On September 12, 1994, in a memo to the trustees, appellant's executive director recommended that the north Eastlawn Subdivision be included in the project. The area, according to the executive director, did not have a "pure majority (70–90%) of affected parcels," in opposition to the project.[3]

On September 13, 1994, appellant's trustees approved waterline project No. 234, including the participation of the north Eastlawn Subdivision in the project. Shortly thereafter, appellees filed suit, seeking an injunction for the purpose of excluding them from the waterline project.

Following a full hearing, the court granted appellees the injunction they sought. The court found numerous violations of statutory procedures mandated by R.C. Chapter 6119. Additionally, the trial court determined that appellant had not dealt fairly with appellees. According to the trial court, appellant set the rules for exclusion from the water district project; when appellees succeeded in satisfying the rules, appellant changed the requirements. This, the trial court determined, constituted a "clear" violation of appellees' constitutional right not to be deprived of property without due process of law.

Appellant now appeals the trial court's judgment setting forth the following two assignments of error:

"FIRST ASSIGNMENT OF ERROR

"The Trial Court erred in ruling that Defendants/Appellants violated Plaintiffs/Appellees' due process constitutional rights.

"SECOND ASSIGNMENT OF ERROR

"The Trial Court erred in ruling that the Plaintiffs/Appellees be excluded from the Project and that Defendants/Appellants were permanently enjoined from attempting to collect any assessment costs from them."

---

2.  The trial court found that there were (excluding Woodville Road) one hundred seventy-six parcels of which ninety-seven home owners objected to inclusion in the project: a fifty-five percent majority.

3.  The September 12 memorandum itself appears to state the exact opposite. It states, "We reviewed areas * * * recommended dropping from the project [sic]. Areas were reviewed which no longer had the pure majority (70–90%) of affected parcels' [sic] support for the waterline." In testimony, however, appellant's executive director stated that the seventy to ninety-percent figure was the majority necessary for objectors to opt out of the project. The executive director stated that he had relayed this figure at the informational meetings, an assertion that the trial court found was unsupported by the tapes of the informational meetings.

I

■ The Fifth and Fourteenth Amendments to the United States Constitution prohibit the states from depriving an individual of property without due process of law. In its most fundamental form, procedural due process demands that prior to state action, an individual must receive adequate and timely notice of the proposed action and a meaningful opportunity to be heard. *Goldberg v. Kelly* (1970), 397 U.S. 254, 267–268, 90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287, 298–299. Encompassed in this is the concept that, in order for the procedure to be meaningful, the governmental activity must be fundamentally fair. *Quill Corp. v. N. Dakota* (1992), 504 U.S. 298, 312, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91, 106; *Gibraltar Mausoleum Corp. v. Cincinnati* (1981), 1 Ohio App.3d 107, 109, 1 OBR 410, 412–413, 439 N.E.2d 922, 925–926. That is, the proceedings as a whole must conform to the community's sense of fair play and decency. *United States v. Lovasco* (1977), 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–2049, 52 L.Ed.2d 752, 759; see, also, *Baltimore & Ohio RR. Co. v. Pub. Util. Comm.* (1968), 16 Ohio St.2d 60, 63, 45 O.O.2d 335, 336–337, 242 N.E.2d 577, 579–580.

Appellant does not challenge the fact that the requirements of procedural due process must be met. Rather, in its first assignment of error, appellant argues that, because it substantially complied with the dictates of R.C. Chapter 6119, it afforded appellees sufficient due process of law.

The trial court found several violations of statutorily mandated procedures. Each of which, it concluded, violated appellees' due process rights. These included appellant's failure to notify those persons objecting to assessments by certified mail of the time and place of the hearing, the failure of the equalization board to always be constituted of three persons, and the failure of the members of the equalization board to take the oath of office until after the hearings were completed. The trial court concluded that each of these were due process violations, as they violated R.C. 6119.49.

■ Appellant's argument with respect to the statutory violations is persuasive. Appellees failed to demonstrate, or even allege, in what manner these statutory violations prejudiced them. No person testified that because his or her notice arrived by ordinary mail rather than certified mail, actual notice of the time and place of the scheduled hearing was not had. No person testified that the decision of a two-person equalization board was split so as to show that the absence of a third member affected its determination. Similarly, there was no evidence that the late administration of the equalization board members' oath had any effect on the proceedings whatsoever. Accordingly, we must agree with appellant that its statutory violations do not *per se* constitute due process violations.

■ More troubling, however, is the question of whether fundamental fairness was provided appellees. The trial court found that appellant's trustees had ceded their rulemaking authority to their executive director. The director, in turn, failed to establish any static rules or procedure to permit property owners to opt out of the project.[4] Instead, the executive director set rules for exclusion, apparently by whim, and when appellees succeeded in satisfying them, then the rules were changed. It is the fluidity of this governing procedure that offends common notions of fairness, as citizens are entitled to rely on the official directives from their government. Therefore, we conclude that appellant failed to provide fundamental fairness in its dealings with appellees.

Accordingly, the trial court properly determined that appellees were denied the due process of law in this matter. Appellant's first assignment of error is not well taken.

## II

In its second assignment of error, appellant asserts that even if the trial court's determination of a due process violation is correct, the court cannot enjoin the collection of assessments from appellees once there has been a determination of necessity made pursuant to R.C. 6119.46 and no claim for damages has been made pursuant to R.C. 6119.50.

■ The trial court enjoined appellant from collecting assessments from appellees for so long as the individual appellees or their successors chose not to avail themselves of the alternate water service which is now available to them. An injunction is an extraordinary equitable remedy which is available if there is no adequate remedy at law. *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595, syllabus; *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498–499. Its purpose is to prevent a future wrong that the law cannot. *Sternberg v. Kent State Univ. Bd. of Trustees* (1974), 37 Ohio St.2d 115, 118, 66 O.O.2d 257, 258–259, 308 N.E.2d 457, 460. It is within the court's discretion to grant such a remedy and the court's decision will not be overruled absent an abuse of that discretion. *Perkins, supra,* 165 Ohio St. at 125, 59 O.O. at 153–154, 133 N.E.2d at 598.

■ Given the nature of the constitutional violation visited upon appellees, the law provides no adequate remedy. Similarly, the remedy that the trial court has

---

4. R.C. Chapter 6119 provides the authority for the organization of regional water and sewer districts. Nothing in this chapter designates a particular procedure that must be followed in order for residents of a water district to opt out of a proposed plan. Therefore, pursuant to the powers and duties authorized under R.C. Chapter 6119, a local board of trustees is vested with the authority to create its own specific rules or procedures required for such an option.

chosen in this matter is restrained in its scope and reasonably related to the damage suffered. Accordingly, we cannot say that the court abused its discretion in fashioning such a remedy. Appellant's second assignment of error is not well taken.

The judgment of the Wood County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.

*Judgment affirmed.*

GLASSER and MELVIN L. RESNICK, JJ., concur.