DECISION
Appellant, Robert Williams, the father of Cody Williams, appeals from an order terminating his parental rights and placing Cody, at the age of seven, in the permanent custody of appellee, Franklin County Children Services ("FCCS").[1]
On October 21, 1998, the Juvenile Branch of the Franklin County Court of Common Pleas, Division of Domestic Relations, adjudicated Cody to be a dependent minor and committed him to the temporary custody of FCCS. As part of its disposition, the court approved a case plan that outlined the issues that caused Cody to be removed from his parents' home and set forth a strategy to reunify Cody with his parents. The case plan required appellant to complete parenting classes, substance abuse treatment and domestic violence counseling.
On October 22, 1999, FCCS filed a motion for permanent custody of Cody. The motion, which was filed pursuant to R.C. 2151.413, alleged that appellant had "acted in a manner such that the child cannot be placed with him within a reasonable period of time or should not be placed with him."
Appellant attended the hearing on the motion for permanent custody and he was represented by counsel. He testified that he was renting a nine-room home in Mount Vernon, and that there was ample room for his son in this house. He stated that, although it was difficult for him to make regular visits to his son from Mount Vernon, he was able to make most visits. He testified that he was abstaining from alcohol and drug use. He testified that he had attended domestic violence and substance abuse classes, requirements of the case plan. He admitted, however, that he had yet to complete his classes. Documents provided by appellant indicated that he had not begun the classes until April 2000, three months prior to the hearing. Appellant admitted that these services were also required as conditions of his current probation following domestic violence convictions.
Appellant admitted that he had been incarcerated in February 2000, for failing to register as a sex offender, but he testified that the charge had been dismissed. He also admitted that the police were called to his home in Mount Vernon in May or June 2000, but he explained that the police call was a result of an argument involving other people who were visiting appellant. He admitted that Cody's mother had been living with him periodically in Mount Vernon, notwithstanding a civil protection order prohibiting them from having contact. He stated that he had been unaware that he was not supposed to have contact with the mother.
The family's FCCS caseworker, Renee Lyss, testified that appellant had completed parenting classes, but she noted that he had not completed domestic violence or substance abuse classes as required by the case plan. She testified that appellant was twice incarcerated while Cody was in the temporary custody of FCCS. She noted that FCCS had paid $950 in overdue rent in January 1999 to prevent appellant's eviction, but he eventually lost his housing anyway after he was incarcerated for two months later that year. She testified that appellant failed to make any effort to reimburse the agency for this financial assistance. Lyss noted that appellant was incarcerated for an additional month in February 2000.
Lyss testified that Cody was living in foster care with one of his stepsisters. She stated that Cody liked when his father visited, but she did not believe that there was a significant bond between father and son. She admitted that, in September 1999, Cody wished to return to his parents' home. She testified that it was now her impression that Cody did not want to reunify with his parents.
Although Cody's guardian ad litem was present and questioned witnesses, he did not testify, nor did he provide the court with a written report. The guardian ad litem called Cody's attorney as a witness. The attorney testified that he had twice visited with Cody. He testified that Cody does not wish to return to either biological parent. The attorney also provided his own opinions about what would be in Cody's best interests, and he concluded: "My opinion would be that he should be placed for adoption through Franklin County Children Services or another appropriate placement agency."
At the close of evidence, and without hearing closing argument, the trial court granted permanent custody of Cody to FCCS. Appellant now raises the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT FAILED TO ADMINISTER AN OATH OR AFFIRMATION TO ANY OF THE WITNESSES, DID NOT GIVE ANY OF THE PARTIES AN OPPORTUNITY TO PRESENT A CLOSING ARGUMENT, ALLOWED THE ADMISSION OF INADMISSIBLE AND PREJUDICIAL HEARSAY EVIDENCE, AND FAILED TO CONSIDER THE WISHES OF THE CHILD IN THE MANNER PROVIDED BY LAW THEREBY DEPRIVING THE APPELLANT OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW.
We agree that the trial court erred because it failed to consider the wishes of the child.
R.C. 2151.414(D) provides the following, in relevant part:
 (D) In determining the best interests of a child at a hearing held [on a motion for permanent custody], the court shall consider all relevant factors, including, but not limited to, the following:
* * *
 (2) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child[.] [Emphasis added.]
Cody was seven years old at the time of the hearing and, according to the FCCS caseworker, Cody was capable of sharing his own opinions about his placement. Under those circumstances, the trial court was required to consider Cody's wishes.
At some point during the history of this case, Cody's apparently expressed wishes were in potential conflict with the guardian ad litem's opinion about Cody's best interests. Because of this potential conflict, the court appointed an attorney to represent Cody.
The Ohio Supreme Court has distinguished between the role of the guardian ad litem and the role of a child's attorney. In re Baby GirlBaxter (1985), 17 Ohio St.3d 229, 232. The role of a guardian ad litem
is to investigate the child's situation and then ask the court to do what is in the child's best interest, while the role of an attorney is to zealously represent his client within the bounds of the law. Id. When a child is represented by an attorney, the attorney, in his representational capacity, may express the wishes of the child. Indeed, the obligation of expressing the child's wishes falls to the child's attorney, while the guardian ad litem focuses instead on assessing what would be in the best interest of the child.
In the instant matter, the record is devoid of reliable evidence about Cody's wishes. The guardian ad litem did not testify about Cody's wishes or submit a report until after judgment was rendered. Cody did not testify about his own wishes. Cody's attorney testified, but he did not offer clear evidence about the wishes of this child.[2] Although the attorney stated that Cody did not wish to live with appellant, the attorney also testified as to his own personal opinion about Cody's best interests. It is unclear in the record whether Cody actually told his attorney that he did not wish to live with appellant or if the attorney simply opined that Cody did not wish to live with appellant. In light of the ambiguity in his testimony, Cody's attorney failed to provide the judge with clear evidence about Cody's own wishes. Moreover, in providing personal opinion evidence about Cody's best interests, the attorney blurred the distinction between the role of the guardian adlitem and the role of an attorney advocate, doing violence to the very reason that the attorney was appointed in this case.
We also note that the trial court's ability to assess all the relevant factors, including the wishes of the child, in determining Cody's best interests may have been further hampered because the court did not receive a timely written report from the guardian ad litem. R.C.2151.414(C) states that "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing" on a motion by FCCS, pursuant to R.C. 2151.413, for permanent custody of a child. (Emphasis added.) In the instant matter, the guardian ad litem did not submit a copy of his report prior to or at the time of the hearing, and the court delivered a decision from the bench without benefit of the report. The trial court rendered its judgment entry on August 9, 2000, although the file stamps indicate that the guardian ad litem's report was filed ten days after judgment was entered. We note that some appellate districts have found the failure of a guardian ad litem to submit a timely report to be harmless error under some circumstances. Inasmuch as the guardian ad litem's opinion was the same as that reached by the trial court, in this case we need not express an opinion as to whether a guardian ad litem's failure to provide a timely report, by itself, constitutes reversible error; however, we find that the omission of a timely report in this case is further evidence that the trial court rendered its judgment without proper consideration of the factors listed in R.C. 2151.414(D).
Our conclusion regarding the court's erroneous failure to consider Cody's wishes is dispositive of this appeal and forms the basis for our decision to reverse and remand this case. We need not, therefore, express an opinion regarding whether the trial court's administration of the oath, its failure to hear closing argument and its rulings on hearsay objections amounted to reversible error, and we overrule as moot the remainder of appellant's assignment of error as it relates to those issues.
In an effort to provide guidance, however, we briefly address the remainder of appellant's assignment of error. Specifically, we observe that, at best, the proceedings were not conducted in a manner that reflects the seriousness that ought to attach to a hearing on a motion for permanent custody of a child.
Appellant argues that the trial court erred by administering an inadequate oath to witnesses. The Ohio Rules of Evidence apply to hearings on motions for permanent custody. Juv.R. 34(I). Evid.R. 603 provides the following:
 Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so.
In the instant action the trial court made, at best, only a marginal effort to administer an oath. When the witnesses took the stand, the judge merely stated: "Consider yourself sworn." The judge's statement did not require any acknowledgment or response from the witnesses, and most of the witnesses gave no response to this statement.
Although we believe that the form of the oath was troublesome, we also note that appellant's counsel tolerated the procedure, failing to enter an objection and arguably waiving his right to an argument on appeal. See Gibraltar Mausoleum Corp. v. Cincinnati (1981), 1 Ohio App.3d 107,111 (noting that an appellant who did not object to the introduction of unsworn testimony waived its right to object to the testimony on appeal).
We are likewise troubled by the trial court's decision to render an oral pronouncement of judgment at the close of the hearing without allowing the attorneys an opportunity to engage in closing argument or a summation of the evidence. Appellant had a right to effective assistance of counsel at the hearing. See Juv.R. 4, R.C. 2151.352, 2151.414(A)(1);In re Heston (1998), 129 Ohio App.3d 825, 827. Although we note that appellant's counsel did not object to the judge's failure to allow argument, and we express no opinion about whether a party must be permitted to give a closing argument in a permanent custody hearing, we believe that the trial court's failure to ask whether the attorneys wanted to engage in argument is a further example of the unsettling informality that permeated this proceeding.
Finally, we agree with appellant that hearsay evidence comprises a significant portion of the record. "[E]xcessive reliance by the court on hearsay evidence may lead to a determination on appeal that the agency failed to meet its burden of showing by clear and convincing evidence that permanent termination was justified." In the Matter of: Greene
(Nov. 17, 1992), Franklin App. No 92AP-288, unreported. Appellant's attorney, however, entered very few objections to the testimony offered, and only one objection was entered on the basis of hearsay, thereby waiving the issue of hearsay on most of the testimony for purposes of this appeal. See Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121.
We are mindful that, under certain circumstances, the juvenile court may conduct its hearings in an informal manner. See Juv.R. 27(A). The need for appropriate informality in some contexts, however, does not discharge the court or counsel from their evidentiary or procedural obligations, where applicable, particularly concerning matters of such importance as the permanent custody of a child. See Juv.R. 34(I) (noting that "[t]he Rules of Evidence shall apply in hearings on motions for permanent custody"). The conduct of the court and counsel in this case with regard to such matters as swearing witnesses, allowing for closing argument, and tolerating hearsay evidence demonstrates a troubling amount of informality during a very serious proceeding.
For the foregoing reasons, appellant's assignment of error is sustained in part and overruled in part as moot. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is reversed, and this case is remanded for a new hearing, consistent with this decision, on FCCS's motion for permanent custody of Cody Williams.
 _________ BOWMAN, J.
PETREE and BROWN, JJ., concur.
[1] The trial court's order also terminated the parental rights of Cody's mother, Monica Williams. Ms. Williams is not a party to this appeal.
[2] We express no opinion as to whether the attorney's testimony violated any of the disciplinary rules.