C.D.S., Inc., Appellee, *v.*
Village of Gates Mills et al., Appellants.

[Cite as C.D.S., Inc. *v.* Gates Mills (1986), 26 Ohio St. 3d 166.]

(No. 85-1299—Decided August 25, 1986.)

*Frank Leonetti,* for appellee.

*Squire, Sanders & Dempsey, Charles F. Clarke, Daniel J. O'Loughlin, Bissell & Bissell* and *Robert K. Bissell,* for appellants.

*Per Curiam.* The issue before us is whether a provision in a charter municipality's Zoning Code, intended to protect a permitted nonconforming use, should be interpreted to prevent enforcement of a valid health, safety and welfare regulation in the municipality's Fire Prevention Code. For the reasons to follow we hold for the municipality and reverse the appellate court decision.

## I

The appellate court construed the off-street parking requirements contained in Chapter 923 of the Fire Prevention Code *in pari materia* with Chapters 711 and 715 of the Zoning Code to prevent enforcement of the Fire Prevention Code. We cannot agree for a number of reasons.

First, Section 711.01(v) defines "Zoning Code," as used in Section 711.05, as follows: " 'Zoning code' means Ordinance 450, passed June 13, 1938, as amended." While this "Zoning Code" definition expressly includes Part Seven of the Codified Ordinances of Gates Mills, it does not include any other ordinance provision. Second, Section 711.02, a provision entitled "Interpretation; Purpose," indicates "[t]his Zoning Code shall not repeal, abrogate, annul or in any way interfere with any existing provi-

sions of law or ordinance * * *." In short, the Zoning Code indicates it *cannot* be read *in pari materia* to abrogate or interfere with any other section of the Gates Mills Codified Ordinances. Because a clear intent was manifested for the Zoning Code to be interpreted separately from the remaining code parts, use of the statutory interpretation doctrine of *in pari materia* in this case is inappropriate. *Cicerella* v. *Jerusalem Bd. of Zoning Appeals* (1978), 59 Ohio App. 2d 31 [13 O.O.3d 99]; cf. *Brauer* v. *Cleveland* (App. 1964), 94 Ohio Law Abs. 464, 467 [31 O.O.2d 348].

Third, at the time of its enactment, Section 923.01 of the Fire Prevention Code was applicable only to "any building or structure designed or intended for institutional, retail business or office use" constructed or altered after the passage of the ordinance. (June 30, 1959.) Section 923.02 reads in pertinent part:

"WHEN REQUIRED.

"Accessory off-street parking facilities, including access driveways, shall be determined in conformance with this chapter and shall be provided for as a condition precedent to the occupancy and use of such building or structure:

"(a)   Whenever a building or structure is constructed or a new use established * * * [or]

"(b)   Whenever the use of an existing building or structure is changed to a use requiring more parking facilities, or whenever an existing building is altered and there is an increase in the seating capacity or floor areas of the building or structure * * *."

In effect, even after passage of Chapter 923, appellee's restaurant *continued to operate lawfully,* with only fourteen off-street parking spaces, because this ordinance contained a "grand-father clause," Section 923.02, which allowed those operations, which predated this legislation, to continue lawful existence. Thus, appellee's business was not, as it contended, ever "a valid non-conforming business."

Fourth, the term "nonconforming use" is a term of art. This term is employed to designate a use of property which was lawful prior to the enactment of a *zoning ordinance* and which use may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions. R.C. 713.15; *State* v. *Pierce* (1956), 164 Ohio St. 482 [58 O.O. 325]. Logically then, a permitted use is not a nonconforming use. The use of this building as a restaurant was always, and would still be, a conforming use under the Zoning Code. Since appellee's building was never a nonconforming use, the Zoning Code use exception provision is clearly inapplicable and the trial court was correct in granting summary judgment as a matter of law.

## II

Appellee argues "that it had a vested interest in the right to use its property as a nonconforming use, which right was protected by the Constitution, State Statute, Municipal Ordinance and the Decree of the Com-

mon Pleas Court of Cuyahoga County, Ohio." Although we have resolved appellee's argument, that the property was a proper nonconforming use, against appellee, an additional observation is appropriate. Both conforming and nonforming uses are subject to ordinances and regulations of a police nature predicated upon protection of the public health, safety, welfare, and general good.[2] See, *e.g., Goldblatt v. Hempstead* (1962), 369 U.S. 590; *Akron v. Klein* (1960), 171 Ohio St. 207 [12 O.O.2d 331]. An owner of property does not acquire immunity against the exercise, by a municipality, of its police power because such owner began his original operation or use of property in full compliance with existing laws. As stated by the Supreme Court in *Queenside Hills Realty Co. v. Saxl* (1946), 328 U.S. 80, 82-83:

"Little need be said on the due process question. We are not concerned with the wisdom of this legislation or the need for it. * * * Protection of the safety of persons is one of the traditional uses of the police power of the States. * * * Many types of societal legislation diminish the value of the property which is regulated. * * * *But in no case does the owner of the property acquire immunity against exercise of the police power because he constructed it in full compliance with the existing laws.* * * * The police power is one of the least limitable of governmental powers, and in its operation often cuts down property rights. * * * *The question of validity turns on the power of the legislature to deal with the prescribed class.*"[3] (Emphasis added; citations omitted.)

Pursuant to R.C. 3781.11, municipalities may require all building repairs and construction to conform to current building codes.[4] Such regulatory legislation, enacted pursuant to a state or municipality's police power, will be enforced so long as such power is not exercised arbitrarily. *Hadacheck v. Sebastian* (1915), 239 U.S. 394. The specific legislation in this case, Chapter 923, was adjudged to be a "valid and legal ordinance" by the

---

[2] The fact that zoning ordinances in this state and elsewhere except preexisting uses of land from the operation of use restrictions can be explained on the basis of constitutional principles. An existing use is said to be the subject of a vested right in the user. As such, to prohibit such use by enforcing subsequently enacted zoning ordinances would amount to the taking of the user's property without due process of law. *Clifton Hills Realty Co. v. Cincinnati* (1938), 60 Ohio App. 443; see, also, *Cicerella v. Jerusalem Bd. of Zoning Appeals* (1978), 59 Ohio App. 2d 31 [13 O.O.3d 99].

[3] See *Hadacheck v. Sebastian* (1915), 239 U.S. 394; *Block v. Hirsh* (1921), 256 U.S. 135. See, also, *Chicago, B & Q. RR. Co. v. Nebraska* (1898), 170 U.S. 57; *Hutchinson v. Valdosta* (1913), 227 U.S. 303.

[4] R.C. 3781.11 reads in pertinent part:
"The construction, alteration, erection, and repair of buildings * * * shall conform to the statutes of this state or the rules and regulations adopted and promulgated by the board of building standards, *and to provisions of local ordinances* not inconsistent therewith." (Emphasis added.)
See, also, R.C. 3781.01; *Myers v. Cincinnati* (1934), 128 Ohio St. 235.

Court of Common Pleas of Cuyahoga County in the case of *Gates Mills* v. *McNally-Doyle Restaurants, Inc.* (Feb. 3, 1964), Cuyahoga C.P. No. 788040, unreported. Additionally, as noted by this court, in *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 96 [20 O.O.3d 88]:

"* * * [A]ccessory off-street parking requirements * * * are rationally related to several safety hazards which the city may lawfully regulate pursuant to its police powers: protection of pedestrians and drivers, elimination of traffic congestion and reduction of air and noise pollution."

Accordingly, this ordinance, enacted pursuant to the proper exercise of appellant municipality's police powers, is enforceable. Any vested interest which appellee might have had in the right to maintain the use of its property would be subject to such legislation. In *Hadacheck, supra,* at 410, the court stated:

"It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. * * * To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community." (Citation deleted.)

Adoption of appellee's position would have far-reaching consequences and might nullify or prevent appellant from enforcing other provisions of the Fire Prevention Code, such as the Ohio Fire Code (Chapter 941); plumbing and sewer regulations (Chapters 931-937); the National Electrical Code (Chapter 927); chimney and wall construction requirements (Chapters 915, 919). Based upon the foregoing law and logic we cannot accept appellee's argument against enforcing the fire regulations.

## III

Finally, appellee argues that the off-street parking issue was litigated in the 1963-1964 action and is thus barred from relitigation by the doctrine of *res judicata.* We disagree. The village in that action sought an injunction to prevent C.D.S. from expanding the restaurant without complying with off-street parking requirements. Although the present action refers to the same subject matter of off-street parking, the former judgment neither authorized nor prevented C.D.S. from continuing its operation as it existed. That issue was never litigated, and therefore *res judicata* is not a bar. See *Goodson* v. *McDonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193, 201; *Trautwein* v. *Sorgenfrei* (1979), 58 Ohio St. 2d 493 [12 O.O.3d 403], syllabus.

## IV

It is apparent that appellee has no legal basis to support its stance in

the cause at bar. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

*Judgment reversed.*

CELEBREZZE, C.J., LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

SWEENEY and C. BROWN, JJ., separately concur in part and dissent in part.

HOLMES, J., concurring. Although recognizing, and having sympathetic tendencies toward the equitable approach of the allowance of the operators of the Red Fox Inn Restaurant to resurrect that which has been accidentally altered and to continue its business as before, I must concur with the majority particularly upon the basis of one portion of the majority opinion. The enactment of the Building and Fire Prevention Code ("Fire Prevention Code") is within the most important areas of municipal exercise of its home rule police power. It is vital that the health, safety and welfare of the citizenry be protected through such powers, even if the equitable considerations might appear to be disadvantageous to some of the citizens, as here.

However important the zoning regulations of a municipality might be for its appropriate development, where the city laws do not specifically call for the reading of such laws into other sections of the law pertaining to the Fire Prevention Code, such should not be so interpreted. In this regard, as pointed out by the majority, other extremely important provisions of the Fire Prevention Code such as the Ohio Fire Code, the National Electrical Code, the chimney and wall construction requirements, all measures significantly promulgated for the health and safety of the general public, must not be bypassed or excepted in the rebuilding of any facility. The same reasoning must apply to the off-street parking facility requirements that are to serve the newly constructed facility, in that such off-street parking ordinance requirements have not been so enacted for the convenience of the customer patronizing the facility, but have been enacted with the appropriate flow of automobile traffic and emergency vehicular traffic as the reasonable purposes of the legislation, with the end result being the health, safety and welfare of the general public.

SWEENEY, J., concurring in part and dissenting in part. With respect to the issue of *res judicata,* I agree with the majority opinion that the court of appeals' judgment in this vein should be sustained. Although the 1963-1964 litigation between the parties concerned off-street parking, the precise issue involved in the cause *sub judice* has never been litigated, as correctly noted by the majority.

Nevertheless, on the basis of equity and fairness, I must dissent from the majority's disposition of the court of appeals' reversal of summary judgment.

In this cause, appellee's building was completely destroyed by fire through no fault of its own. Although the building was nonconforming with respect to the off-street parking ordinances, I do not believe that such an alleged police power regulation should prevent appellee from constructing a replica building, especially since Section 711.05 of appellant municipality's Zoning Code permits such reconstruction where circumstances, such as a fire, allow the reconstruction.

In my view, the majority's holding increases the fortuitous hardship that has already befallen the appellee. As noted in Justice Clifford Brown's dissent, the appellant was content to regard the appellee's former operation of a restaurant with limited parking as a nonconforming use entitled to continue, because it predated the off-street parking ordinances. Once appellee's building was destroyed, appellant ignored its prior stance in order to prevent reconstruction of the building. The majority's assent to the appellant's inconsistent course of conduct is totally inequitable and patently unfair. I would affirm the court of appeals' reversal of the summary judgment rendered below.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part. I concur with the majority's disposition of appellee's *res judicata* argument. However, equitable considerations compel me to dissent from today's decision for the following reasons.

For over twenty-two years, the appellant village found no reason to take action to compel appellee to conform with the off-street parking regulations contained in Chapter 923 of its Building and Fire Prevention Code. Obviously, appellee would never have had to comply absent the 1982 fire. When appellee's business was destroyed without appellee's fault, the village suddenly resurrected the parking regulations as a reason to deny permission to rebuild, thereby working a severe hardship on appellee. From 1959 to 1982, the village was content to regard appellee's former operation of a restaurant with limited parking as a nonconforming use entitled to continue because it predated the relevant parking regulations. After appellee's structure burned down, the village abruptly reversed its stance and denied that appellee's business was ever a nonconforming use entitled to be continued or restored. Unlike the majority, I am not inclined to endorse such a harsh, inconsistent and inequitable course of conduct.

Such equitable considerations are clearly applicable in this case, since appellee's complaint prayed for equitable relief in the form of a mandatory injunction ordering defendants to grant the building permit. The equitable maxim "equity aids the vigilant" is particularly relevant to the facts herein. See Clark, Principles of Equity (1919) 35, Section 31. The appellant village has been anything but vigilant in this case. As noted above, ap-

pellant countenanced appellee's restaurant as a "nonconforming use" entitled to protection for over twenty-two years. Now that the restaurant has been destroyed, appellant awakens from its slumber and discovers that the restaurant was never a nonconforming use and that it must comply with parking regulations. I do not count the 1964 action as evidence of appellant's vigilance in this matter, since that action was to prevent appellee from expanding its capacity, not to force appellee to bring its existing operation into compliance with parking regulations.

I acknowledge that the analysis of the majority is technically correct from a strictly legal standpoint. But its cold disregard of justice and equity calls to mind the words of Charles Dickens: " 'If the law supposes *that*,' said Mr. Bumble, 'the law is a ass, a idiot.' " Oliver Twist, Chapter 51. It also does violence to the words of the Apostle Paul: "The letter of the law killeth; the spirit giveth life."