OPINION *Page 2 
{¶ 1} In this case, Christie M. Jennings and Craig V. Simonson ("Appellants") appeal from the judgment of the Greene County Court of Common Pleas, which affirmed a decision of the Xenia Township Board of Zoning Appeals ("BZA") adverse to Appellants.[1]
 {¶ 2} Preliminarily, we note that this matter was dismissed on January 4, 2007, for lack of jurisdiction. At that time, we found that the trial court had addressed and rendered a decision on Ms. Jennings' administrative appeal while an appeal was pending in this court by a group of landowners seeking to intervene in the administrative action. We observed that, when an appeal is pending, a trial court loses jurisdiction except to take action in aid of the appeal, and that it cannot take action inconsistent with an appellate court's power to reverse, modify, or affirm the judgment from which the appeal comes.
 {¶ 3} Upon dismissing the appeal, we stressed that the trial court need not retry the case. Instead, following the decision from the intervention appeal filed on December 1, 2006, the trial court was permitted to re-enter the final judgment that it had entered on December 29, 2005. Likewise, the parties were permitted to incorporate by reference *Page 3 
the briefs already filed should they choose to file a new notice of appeal. Thus, notice of the present appeal was properly and timely filed on February 21, 2007.
 {¶ 4} The relevant history of the property at issue, 1975 Clark Run Road in Xenia, Ohio, begins in 1947 with its owner, Una Harbison. Ms. Harbison owned this 62.1-acre lot from 1947 until 1975. During this period of time, Ms. Harbison permitted her brother, William Harbison, and Bob Denehy to extract sand and gravel from the property. The exact dates of sand and gravel extraction are points of contention. The record also shows that Ms. Harbison allowed her nephew, William Kent Harbison, to farm the property from 1959 until 1975.
 {¶ 5} In 1975, Roger Richards obtained the property through a public auction; he owned it until his death in 2000. During this period of ownership, Mr. Rogers carried out a mining operation in which he, too, extracted gravel from the property. The exact date that Mr. Richards initiated his operation is disputed between the parties; however, he first obtained a mining permit from the Ohio Department of Natural Resources in 1982.
 {¶ 6} On June 26, 2000, Xenia Township Zoning Inspector, Leona Fletcher, issued a Notice of Zoning Violation to Mr. Richards, citing him with Non Permitted Use in an Agricultural District-Mineral Extraction. In response, Mr. Richards filed an appeal with the Board of Zoning Appeals requesting a conditional use permit for sand and gravel extraction in an agricultural district. Prior to the hearing on July 18, 2000, however, Mr. Richards passed away, leaving the property to his surviving spouse, Sherry Richards. A second hearing was scheduled for August 15, 2000. Before the second hearing, Ms. Richards withdrew her application for a conditional use permit and informed the Xenia Township Board of Trustees that she planned to pursue rezoning of *Page 4 
the property for use as a gravel pit.
 {¶ 7} In December 2000, Ms. Richards discussed with Rhonda Painter, the successor to Ms. Fletcher as the Xenia Township Zoning Inspector, the possibility of the property being issued a nonconforming use status. Deliberations continued for over two years, during which time, Ms. Richards passed away, leaving the property to her daughter, Appellant Christie Jennings. At the conclusion of these discussions, Ms. Painter determined that the property did not meet the qualifications "of grandfathering the nonconforming use," and she issued a second Cease and Desist Order on the property. Christie Jennings filed a Notice of Appeal on October 30, 2003.
 {¶ 8} After extensive hearings, the BZA held the following:
 {¶ 9} "The evidence presented at the hearing in support of upholding the Zoning Inspector's decision to issue the Final Determination Order of October 10, 2003 was both credible, and substantial, and to a preponderance of the evidence standard. The credible and substantial evidence was more than sufficient to find that the land was not being used as an active mining or mineral extraction operation at the time of the first zoning resolution's enactment on November 3, 1959. Because of this, the continued mining that is alleged to have been conducted after this time frame was not a preexisting use and therefore would have been ineligible for nonconforming use status.
 {¶ 10} "Alternatively, the evidence conclusively indicates that even if the mining operation was being conducted immediately prior to the 1959 zoning resolution's enactment, nevertheless several two year periods of time elapsed where there had been a voluntary discontinuance of mining operations, thus negating any non-conforming use status that may have been previously earned." (Order Affirming Zoning Inspector's *Page 5 
Cease and Desist Order at 9-10.)
 {¶ 11} Appellants appealed the decision of the BZA to the Common Pleas Court of Greene County. There, the court found that the testimony of the witnesses who lived in the area of Appellants' property supported the BZA's determination that "mining operations * * * had been discontinued by the owner for a period exceeding two years after 1959 and until it was sold to Roger Richards in 1975." (Decision and Entry at 3.) Thus, the trial court affirmed the decision of the BZA denying the property nonconforming use status.
 {¶ 12} Appellants raise the following four assignments of error on appeal:
 {¶ 13} "I. "The trial court erred by holding that there had been a voluntary discontinuance for a period of two years or more.
 {¶ 14} "II. "The trial court erred by holding that sand and gravel extraction was a prohibited use under the 1959 Xenia Township Zoning Ordinance.
 {¶ 15} "III. "The trial court erred by holding that the administrative hearings were not biased.
 {¶ 16} "IV. "The trial court erred by failing to consider the enforceability of the Xenia Township Zoning Resolution."
 {¶ 17} The standards of review for a court of common pleas and an appellate court differ considerably when an administrative appeal is involved. In the case of In re Application for Conditional Use ofWatkins (Feb. 18, 2000), Montgomery App. No. 17723, 2000 WL 192430, this court confirmed that a court of common pleas must "`determine whether there exists a preponderance of reliable, probative, and substantial evidence' "to support an agency decision. Id. at *2, quotingDudukovich v. Lorain *Page 6 Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 207, 389 N.E.2d 1113. Furthermore, the trial court must presume that the agency decision is "`reasonable and valid.' "Id., quoting Community Concerned Citizens,Inc. v. Union Twp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 456,613 N.E.2d 580. Thus, the trial court must affirm the decision of the administrative agency if it is "supported by a preponderance of reliable, probative and substantial evidence." Id., citingDudukovich, 58 Ohio St.2d at 207.
 {¶ 18} In contrast, when an appellate court reviews a trial court's decision regarding an agency order, the appellate court must only determine if the trial court abused its discretion. Id., citingLorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261, 533 N.E.2d 264. Absent an abuse of discretion, the trial court's decision must be affirmed. Id. Moreover, "an abuse of discretion exists where the trial court's attitude is unreasonable, arbitrary or unconscionable." Id., citing State v. Montgomery (1991),61 Ohio St.3d 410, 413, 575 N.E.2d 167. Decisions are unreasonable if they lack a sound reasoning process to support them. Schafer v. RMSRealty (2000), 138 Ohio App.3d 244, 300, 741 N.E.2d 155, citing AAAAEnterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.
 {¶ 19} Upon considering the record before us, we hold that the trial court abused its discretion when it found that the mining operation on Appellants' property had been discontinued for a period exceeding two years between 1959 and 1975. Accordingly, the judgement of the trial court will be reversed.
 I *Page 7 {¶ 20} Appellants' second assignment of error is addressed initially because it speaks to what this court believes is the central issue of this appeal. In their second assignment of error, Appellants contend that the trial court mistakenly used the 1959 Zoning Resolution as the starting point for determining nonconforming use status pursuant to R.C.519.19. This statute provides that "[t]he lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of said land shall be in conformity with sections 519.02 to 519.25, inclusive, of the Revised Code. The board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution."
 {¶ 21} According to Appellants, sand and gravel extraction was a permitted use under the 1959 resolution, and it did not become a conditional use until the 1968 Zoning Resolution. Thus, Appellants argue that only when mining became a conditional use in 1968 could the property's use have become nonconforming. We agree that the trial court improperly based its decision on evidence indicating a discontinuance between 1959 and 1975.
 {¶ 22} In this court's opinion, both the 1959 Zoning Resolution and the 1968 Zoning Resolution make sand and gravel extraction conditional uses in an agricultural district. Section 8 of the 1959 resolution states that "[excavations, quarries or earth removal operations for the purpose of removing gravel or other natural products from the *Page 8 
ground] may be carried on in an Agricultural District, subject to the conditions established by the Board of Zoning Appeals." (Tr., Ex. 36A.) The resolution goes on to provide that "[s]uch operations shall be permitted in an Industrial District, subject also to conditions established by the Board of Zoning Appeals." (Id.) Unlike the BZA, which found that the resolution permitted mining in industrial districts but prohibited it in agricultural districts, we find the language in these two provisions equally establishes mining operations as a conditional use in both agricultural districts and industrial districts. Thus, sand and gravel extraction was a proper conditional use of Appellants' property under the 1959 resolution.
 {¶ 23} Section 400 of the 1968 Zoning Resolution is even more explicit, for it categorizes sand and gravel extraction as one of the "Conditional Uses Requiring Board of Appeals Approval in an Agricultural District." (Tr., Ex. 36B.) Furthermore this resolution lists the conditions in Section 805, Mineral Extraction, Storage and Processing, that a property owner must satisfy to comply with zoning, thus confirming that sand and gravel extraction is a permissible use subject to conditions.
 {¶ 24} Once an operation is established as a conditional use, we believe classifying the same operation as a nonconforming use is improper. In Shelly Materials, Inc. v. Daniels, Clark App. No. 2002-CA-13, 2003-Ohio-51, we noted that "`inclusion of conditional use provisions * * * in zoning legislation is based upon a legislative recognition that although certain uses are not necessarily inconsistentwith the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances.' "(Emphasis added.) Id. at]}61, quoting Gerzeny v.Richfield Twp. (1980), 62 Ohio St.2d 339, 341, 405 N.E.2d 1034. A *Page 9 
nonconforming use, on the other hand, is a term "employed to designate a use of property which was lawful prior to the enactment of a zoning ordinance and which use may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions." CD.S Inc. v. Village of Gates Mills (1986),26 Ohio St.3d 166, 168, 497 N.E.2d 295, citing State v. Pierce (1956),164 Ohio St. 482, 132 N.E.2d 102. The fact that a use is conditional does not also mean that it fails to conform to an applicable zoning restriction; in essence, the use is permitted in the particular zoning district, although conditions apply.
 {¶ 25} This interpretation of the difference between a conditional use and a nonconforming use is further indicated by the intent of the drafters of the 1968 Xenia Township Zoning Resolution. In this regard, Section 900.6 provides that "[i]t is not the intention herein to classify as nonconforming, a use or building allowed in a district as a conditional use under the regulations of this resolution." (Tr., Ex. 36B.)
 {¶ 26} In this case, Appellants' property was located in an agricultural district that permitted sand and gravel extraction as a conditional use under both the 1959 Zoning Resolution and the 1968 Zoning Resolution. Whether the property owners during these time periods complied with the zoning conditions is an issue not addressed by the parties or by the trial court. Instead, the fact that the use was conditionally permitted prevents it from being nonconforming between 1959 and 1975, and, thus, excepts it from the voluntary discontinuance provision of R.C. 519.19.
 {¶ 27} We should also add that barring evidence of non-compliance with the conditions as set forth in the 1968 Zoning Resolution, Appellant Christie Jennings would be permitted conditionally to continue extracting sand and gravel. "A conditional use *Page 10 
relates to land use, not to ownership." Meck Pearlman, Ohio Planning and Zoning Law (2006) 472, Section 9:11. See, also, Baughman v. Bd. ofZoning Appeals for Harrison Twp., Logan App. No. 8-01-27, 2002-Ohio-3931, at ¶ 17 (invalidating a township zoning condition that cancelled a use permit based on land transfer, not land use). Here, Christie Jennings inherited the property from her mother, Sherry Richards, who inherited the property from her husband, Roger Richards. From the time Roger Richards acquired ownership in 1975 until his death in 2000, the property could properly have been used as a mining operation subject to conditions pursuant to the 1968 Zoning Resolution. Again, the issue of whether Richards obtained a conditional use permit and/or the effect that failing to obtain a conditional use permit had on the mining operation is not being argued. As the use passed with the land, changes in ownership were not affected by the change in zoning restrictions. Therefore, use of the property for sand and gravel extraction transferred to Sherry Richards in 2000 and to Christie Jennings in 2003. Based on the record before us, we conclude that the trial court abused its discretion when it found that Appellants' property lost its nonconforming use status on account of mining operations being discontinued for a period of two years between 1959 and 1975.
 {¶ 28} Accordingly, the second assignment of error is sustained. In so holding, we find that Appellants' first assignment of error regarding voluntary discontinuance of a nonconforming use, and fourth assignment of error regarding completion and extension of nonconforming uses are moot.
 II *Page 11 {¶ 29} Although the first and fourth assignments of error are moot, we will consider Appellants' third assignment of error because it pertains to the manner in which the proceedings were conducted and not to the merits of the case. In their third assignment of error, Appellants assert that the trial court erred in failing to find that the BZA's administrative hearing was biased. Appellants first claim that the township trustees were predisposed toward finding that the use of the property at issue as a gravel pit was not a nonconforming use, and that Ms. Painter's Cease and Desist Order should be affirmed. Appellants maintain they were denied their right to procedural due process as a result of this predisposition.
 {¶ 30} In Brooks v. Dayton (Jan. 25, 1991), Montgomery App. No. 12179,1991 WL 6304, we stated that the fundamental requisite of due process is the opportunity to be heard. Id. at *2 (citations omitted.) However, it has also been noted that "a hearing conducted before a biased tribunal does not fulfill a requisite element of fundamental fairness that must predominate in all quasi-judicial proceedings." Gibraltar MausoleumCorp. v. Cincinnati (1981), 1 Ohio App.3d 107, 109, 439 N.E.2d 922.
 {¶ 31} In Gibraltar, the court found that the appellant was denied due process where the Fire Prevention Board of Appeals failed to establish any rules or regulations that would have provided the appellant with a "sufficient certainty" as to "what it was required to do in order to assert its right to a full and fair hearing." Id. at 110. Furthermore, the court found that the appellate board was uncertain of its function as an appellate tribunal where it failed to identify what type of evidence it could consider for its review. Id.
 {¶ 32} Appellants in the instant case fail to specifically identify actions on the part *Page 12 
of the BZA that would lead to bias or predisposition and ultimately a denial of due process of law. Instead, Appellants draw the court's attention to several letters admitted into evidence that allegedly demonstrate the township trustees' heavy-handed influence on the decision of the zoning inspector, Rhonda Painter. In our opinion, the critical issue is not whether the executive officer was influenced, but whether the judicial body was influenced. In this regard, Appellants fail to establish how the BZA was prejudiced.
 {¶ 33} First, Appellants rely on two letters from the Greene County Prosecutor's Office to Ms. Painter. According to Appellants, the letters implicate the "desire" of the township trustees to prevent further mining operations at Appellants' property. In the first letter, which is dated March 26, 2003, Stephen Haller states that Ms. Painter "indicated that there is a desire among township officials and local residents to prevent the property from continuing to be mined unless its operations can satisfy the current zoning code, * * * ." (Tr., Ex. 17.) The second letter, dated July 30, 2003, further states that Ms. Painter has "indicated that the ultimate desire of the Board of Trustees is to prevent future gravel sales and mining operations of the Sherry Richards/Christie Jennings property on Clarke Run Road." (Tr., Ex. 19.) To this court, neither of these letters demonstrates bias from the BZA. Instead, they indicate the position of the trustees, an executory opinion wholly independent from that of the judicial body, the BZA.
 {¶ 34} Next, Ms. Painter's letter dated August 1, 2003 to the township trustees is simply a statement of Ms. Painter's decision to deny Appellant's property nonconforming use status. (Tr., Ex. 20.) In it, Ms. Painter states that she believes Appellants "would be denied by the Board of Appeals" pursuant to an administrative *Page 13 
appeal. Appellants imply that this memo was ultimately used by the BZA to support its decision.
 {¶ 35} Finally, the Appellants assert that the line, "with the Trustee's help," in an October 30, 2003 letter from Ms. Painter to the BZA, indicates a "predetermined decision of township officials" that was void of any independent determinations made by Ms. Painter herself. In fact, the record reveals that the "help" to which the letter referred was a historical discussion of the activities in the area of the property and some township documents. Again, Appellants failed to show how this letter influenced the actions of the BZA.
 {¶ 36} Absent in any of these documents is proof that the BZA was actually prejudiced. Appellants have a duty in their argument to establish a connection between Ms. Painter's and the trustees' desire to terminate mining operations and any evidence of predisposition on the part of the BZA. They have not done so, and this court is unwilling to make presumptions of its own.[2] On the contrary, our role here is to determine whether the trial court arrived at its decision unreasonably, arbitrarily or unconscionably. We find that it did not with regard to this assignment of error. The letters that Appellants submitted as evidence of Ms. Painter's and the township trustees' predisposition do not establish that the BZA was prejudiced in reaching its decision to shut down mining operations on Appellants' property. In fact, the record reveals that the BZA conducted a fair and just adjudicative hearing. Each party to this claim was *Page 14 
represented by counsel and had the opportunity to present evidence, question sworn witnesses and develop individual arguments. Input from the public was limited and differentiated from testimony to be considered by the board. Moreover, "[administrative hearings are necessarily informal, and this fact does not, in itself, violate the participants' due process rights." Voyath v. Beckert (Feb. 4, 2000), Montgomery App. No. 17745, 2000 WL 125967, at *3. Further evidence shows that the parties voluntarily chose to conduct the hearings in accordance with the Rules of Civil Procedure. (Tr., Ex. 24.) In our opinion, the BZA sufficiently executed the proceedings in an environment not biased toward one decision but open to the arguments and evidence presented by both sides. Based on these findings, we believe the trial court did not abuse its discretion.
 {¶ 37} Appellants next claim that Ms. Painter's dual role as township zoning inspector and clerk for the BZA created a conflict of interest that brought about bias in the proceedings. Specifically, Appellants allege that Painter failed to confine the extent of her involvement as clerk of the BZA to strictly ministerial duties.
 {¶ 38} R.C. 519.16 states that "[t]he township fiscal officer may be appointed secretary of the township zoning commission, secretary of the township board of zoning appeals, and zoning inspector, * * * ." This provision was the subject of inquiry in 1985 Ohio Attny.Gen.Ops. No. 85-052. There, the Attorney General found that an individual could assume these dual positions without impermissible conflicts because the position of secretary is strictly ministerial and, as such, one "would not be in a position to influence the commission in the exercise of its duties." Id. at *4.
 {¶ 39} Appellants argue that Ms. Painter's presence at an executive session in the role of clerk and her October 30, 2003 letter to the BZA demonstrate her deviation *Page 15 
from ministerial duties. We do not find this argument persuasive. In her testimony, Ms. Painter identifies her clerical duties as taking minutes, preparing the room, sending notices to owners of surrounding properties, and placing ads in the newspaper. When questioned about the executive session at issue, Ms. Painter stated that she took minutes up to the point that the BZA members went into executive session; then, she remained in the meeting but did not participate. Other than establishing her presence at the executive session, this evidence does little to support Appellants' argument that Ms. Painter strayed from her ministerial duties and prejudiced the opinion of the BZA. Likewise, Ms. Painter's letter to the BZA simply functions to inform the board of the then-pending application for administrative review and the proposed change in procedure. (Tr., Ex. 24.) Thus, we do not find this evidence sufficient to maintain that the trial court abused its discretion.
 {¶ 40} Under this same assignment of error, Appellants also claim that the hearing was prejudiced by Ms. Painter not fulfilling the requirements of R.C. 519.161. This section of the Revised Code pertains to a township zoning inspector being required to give bond before assuming the duties of the position. In a letter submitted by Ms. Painter on February 13, 2004, it was established that she is covered under a Public Employees Blanket Bond in the amount of $10,000, issued by the insurance carrier of the Xenia Township Board of Trustees. Instead of indicating how these requirements created bias in the proceedings, Appellants propose that Ms. Painter's decisions, especially her determination that the use of the property at issue was not a nonconforming use, should be found unenforceable. Again, without evidence indicating how the BZA was biased by this blanket bond, we cannot say the trial court abused its *Page 16 
discretion as to this assignment of error.
 {¶ 41} Finally, Appellants claim that the BZA wrongfully relied on public comment during the adjudicatory hearing. In support of their argument, Appellants direct our attention to letters submitted from members of the public to Ms. Painter, and to the testimony of six witnesses. Both the letters and the testimony emphasized the public's concern for allowing the continuation of mining operations on Appellants' property, specifically referring to the effect gravel mining operations have on surrounding road conditions and property values.
 {¶ 42} The Tenth District Court of Appeals has distinguished a public hearing from an adjudicative hearing by stating that "[a] public hearing is one where members of the public may speak and express their views on the question of governmental, political and policy considerations as to whether certain legislation should be adopted. Adjudication hearings, however, are not subject to public comment, but, instead, involve the determination of rights of specific persons and whether such rights should be granted based upon evidence (not public opinion) presented at the hearing. Therefore, different procedures are necessary and different rules apply." In re Rocky Point Plaza Corp. (1993), 86 Ohio App.3d 486,491-92, 621 N.E.2d 566.
 {¶ 43} Applying these definitions, this court addressed the issue of public comment in adjudicative hearings in Oberer Dev. Co. v.Fairborn (Apr. 23, 1999), Greene App. No 98-CA-96, 1999 WL 235843. There, we held that the trial court did not abuse its discretion when it considered the sworn testimony of public witnesses in order to affirm a decision of the Fairborn City Council denying approval of development plans. Taking note of the fact that all testimony in Oberer was sworn and that the opposing *Page 17 
side had the opportunity to cross-examine the witnesses, we found that the witnesses had presented sufficient facts to substantiate the trial court's decision, even though part of the testimony contained subjective comments. Id. at *9. We also noted that "an owner of real property may testify about the value of his property, even though he is not qualified as an expert." Id. at *13, citing Smith v. Padgett (1987),32 Ohio St.3d 344, 347, 513 N.E.2d 737.
 {¶ 44} In the present case, while the letters addressed to Ms. Painter mostly contained opinions concerning the impact gravel trucks will have on the condition of the surrounding roads, there was testimony at the hearing pertaining to the loss in property values due to their proximity to Appellants' gravel pit. Had the BZA considered this testimony in making its decision, we believe it would have been proper per this court's opinion in Oberer. Such testimony was made under oath, Appellants had the opportunity to cross-examine the witnesses and to object, which they did, and the testimony had factual basis, although in the midst of other subjective comments.
 {¶ 45} The main difference between the cases cited above and the situation here, however, is the BZA did not base its decision on this testimony. The record reveals that the BZA considered numerous exhibits, several sworn affidavits, and the testimony of seven sworn witnesses in finding that the use of Appellants' property did not constitute a nonconforming use. Nowhere does the record reflect that the BZA's decision was influenced by the testimony that Appellants believe was wrongful public comment. As before, Appellants have failed to demonstrate how the BZA's decision was biased.
 {¶ 46} Accordingly, Appellants' third assignment of error is overruled.
 {¶ 47} The judgment of the trial court is reversed.
[1] According to the Order Affirming Zoning Inspector's Cease and Desist Order, Mr. Simonson is a potential purchaser of the property in question, and he has a contingent executory purchase contract with Ms. Jennings as agent for the estate of Sherry Richards.
[2] We can only infer from Appellants' argument that they believe R.C.519.13, which grants the board of township trustees the authority to appoint a township board of zoning appeals, places the BZA in a position that renders it vulnerable to influence by the township trustees. *Page 1