[Cite as *Al-Khatib v. Harrison Twp. Bd. of Zoning Appeals*, 2022-Ohio-1418.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| AMAR AL-KHATIB | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29299 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-1139 |
| | : | |
| HARRISON TOWNSHIP BOARD OF ZONING APPEALS | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 29th day of April, 2022.

. . . . . . . . . . .

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
 Attorney for Plaintiff-Appellee

SCOTT D. PHILLIPS, Atty. Reg. No. 0043654 and AMELIA N. BLANKENSHIP, Atty. Reg. No. 0082254, 9277 Centre Pointe Drive, Suite 300, West Chester, Ohio 45069
 Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} The Harrison Township Board of Zoning Appeals ("Board") appeals from an order reversing its denial of a Certificate of Zoning Compliance. The appellee is Amar Al-Khatib, who is the sole and managing member of Jack Boy, LLC, an Ohio limited liability company doing business as Coronette Market. Al-Khatib attempted to obtain the certificate for purposes of operating a convenience store.

{¶ 2} According to the Board, its decision denying the certificate was supported by substantial, reliable, and probative evidence. The Board also argues that the trial court improperly substituted its judgment for that of the Board. Finally, the Board contends that the trial court improperly concluded that an illness that prevented a prior owner from continuing his use of property was not reasonably interpreted as a "voluntary" discontinuance of a nonconforming use.

{¶ 3} We conclude that the trial court's order was not unreasonable or an abuse of discretion. The court found that illness which prevented a property owner from continuing his use of the property did not constitute "voluntarily" discontinuing a nonconforming use. Because the Board's zoning ordinance and zoning statutes do not define the term "voluntarily," the common meaning as an act of will of one's own choice applied. The trial court's conclusion that the owner's illness was involuntary and did not cause discontinuance therefore was reasonable. There was also no affirmative evidence establishing a manifest intention to abandon the nonconforming use.

{¶ 4} In addition, the trial court did not improperly substitute its judgment for that of the Board. While the court mentioned a few facts that were irrelevant to the issue of a nonconforming use, this discussion simply reinforced the fact that the Board's decision

was not based on the issue before it, which was whether the prior property owner had voluntarily discontinued a nonconforming use. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 5} According to the administrative record filed in the trial court, on December 17, 2020, Al-Khatib applied for a certificate of zoning compliance for a property located at 2599 Coronette Avenue in Harrison Township. According to the application, Al-Khatib intended to operate a convenience store selling soft drinks, snacks, beer, wine, tobacco, groceries, and lottery tickets. On January 13, 2021, the township zoning administrator denied the application.

{¶ 6} The administrator informed Al-Khatib that the property was zoned residential (R-4), and convenience stores were not permitted. While a commercial use had previously been allowed as a nonconforming use, the administrator noted that the convenience store had been voluntarily closed for more than two years, and the nonconforming use had expired.

{¶ 7} After receiving the denial, Al-Khatib appealed to the Board on January 29, 2021. The Board then scheduled a public hearing on the issue, to be held on March 8, 2021. A staff report provided to the Board offered two options: (1) upholding the administrator's decision as an accurate interpretation of the zoning code; or (2) finding that the administrator erroneously interpreted the zoning code. In the latter circumstance, the Board could modify the administrator's decision and could potentially

approve the certificate with or without modifications.

{¶ 8} At the March 8, 2021 hearing, Emily Crow presented the staff report to the Board. Hearing Transcript ("Tr."), p. 2-6. Crow did not discuss the issue of voluntary discontinuance of the use at that time, although her staff report mentioned that "discontinuance of a nonconforming use of land or a building for a period of more than two years removes the existing nonconforming use status." Staff Report (March 5, 2021), p. 3.

{¶ 9} During the hearing, Al-Khatib's attorney indicated that a grocery had been located on the property for around a half-century. It was called Bill's Market, and Bill then passed the store to his son, "Bud," who operated it for a number of years. However, about four years previously, ill health had forced Bud to close the store. Id. at p. 8.

{¶ 10} During the hearing, Al-Khatib testified and indicated that he would like to open a grocery store in the area because the residents had experienced a tornado and had lost a Kroger store. The nearest grocery was a Wal-Mart located 3.3 miles away. Al-Khatib further stressed that he had contacted many community members and the reaction had been positive. The nearest neighbor had also created a petition in favor of the store. Al-Khatib stated that he wanted to operate a full-service market, with staples being bread, milk, eggs, fruits, and vegetables, and that while tobacco and alcohol would be offered, the store's main purpose would be the groceries themselves. Id. at p. 10-13.

{¶ 11} According to Crow, the grocery store had existed before zoning was put in place and had continued as a nonconforming use. Id. at p. 13-14. There was no dispute at the hearing about the fact that the previous owner had become ill and that more than

two years had lapsed since he had operated the store. *Id.* at p. 14 and 17.

{¶ 12} During the hearing, various community members also testified, including Elesha Snyder, Tom Schindler, Cathy Grubb, Rose Lovely, and David McDowell. Snyder, the operator of a family restaurant in the area, stated that she had been speaking to customers for months about the issue and had heard nothing but praise for the opening of the store. Tr. at p. 18-19. Schindler owned rental properties in the area and said he had been at the market when it was operating. He also commented that having a market for his tenants would be beneficial. *Id.* at p. 21-22.

{¶ 13} Grubb was a neighbor who felt the prior market had been safe for her grandchildren. She favored Al-Khatib's store if it contained food staples, had no drug paraphernalia, and had no alcohol sales at the front. *Id.* at p. 23-24. Lovely, another neighbor, had lived right next to the store since around 1948. She had posted a petition online and had 222 signatures in favor of the store, with no negative comments. *Id.* at p. 26-28. In addition, Lovely stated that the property had always been a market until Bud got sick. *Id.* at p. 28. Finally, McDowell (who appeared to live in the area) said that he would make sure no problems occurred in the area. *Id.* at p. 29-30.

{¶ 14} After the testimony ended, the Board president asked for comments from anyone opposed to Al-Khatib's store, but no one responded. *Id.* at p. 30-31. The Board members then discussed the situation. Nothing was said about interpreting the zoning resolution; the discussion primarily centered on whether the Board members felt having a store in the location was a good or bad idea for the neighborhood. *Id.* at p. 31-38. Earlier, during the testimony, one board member had asked Al-Khatib's counsel how the

term "voluntary" would be construed, and counsel had replied that it would be a "commonsense approach to the use of the term for the Board to adopt as its own." *Id.* at p. 16.

**{¶ 15}** Following the discussion, the Board voted on a motion to uphold the administrator's decision. *Id.* at p. 39. Two members voted for the motion, and two opposed it. *Id.* at p. 41. As a result, the administrator's decision to deny the certificate was upheld. *Id.* at p. 42.

**{¶ 16}** The Board then sent a written notice of its decision to Al-Khatib, who timely filed an administrative appeal in the trial court. After the appeal was filed, Al-Khatib filed a motion asking the court for permission to supplement the record with an affidavit from Dallas Sweigart, Jr. (known as "Bud"), who was the previous owner of Bud's Corner Market. However, the trial court overruled the request.

**{¶ 17}** After the parties filed briefs, the trial court issued an order on October 14, 2021, reversing the Board's decision. The Board timely appealed from the court's order.

## II. Error in Reversing the Board

**{¶ 18}** The Board's sole assignment of error states that:

> The Trial Court Erred by Reversing the Decision of the Harrison Township Board of Zoning Appeals.

**{¶ 19}** Under this assignment of error, the Board has asserted three reasons why the trial court's decision was incorrect: (1) the Board's decision was supported by substantial, reliable, and probative evidence; (2) the trial court substituted its own

judgment for that of the Board and considered irrelevant evidence; and (3) public policy supported terminating the nonconforming use. Before we discuss these points, we will set forth the applicable standards of review.

A. Standards of Review

{¶ 20} The appeal in this case was taken pursuant to R.C. 2506.01(A), which allows appeal to the common pleas court from decisions of political subdivisions. Review standards in this situation are well-settled. A common pleas court "must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Dudukovich v. Lorain Metropolitan Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). However, "this does not mean that the court may blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. The key term is 'preponderance.' If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand." *Id.*

{¶ 21} In contrast, appellate courts have more restricted review powers. "R.C. 2506.04 gives the court of appeals reviewing authority of the common pleas court decision *only* on 'questions of law.' " (Emphasis sic.) *Reed v. Rootstown Twp. Bd. of Zoning Appeals*, 9 Ohio St.3d 54, 59, 458 N.E.2d 840 (1984). "Apart from deciding purely legal issues, the court of appeals can determine whether the court of common

pleas abused its discretion, which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence." *Shelly Materials, Inc. v. City of Streetsboro Planning & Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, 145 N.E.3d 246, ¶ 17, citing *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, 999 N.E.2d 649, ¶ 7.

{¶ 22} An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* Applying these standards, we will consider the Board's arguments.

## B. Discussion

{¶ 23} The Board argues that its decision was supported by the appropriate amount of evidence and that the trial court improperly substituted its judgment for that of the Board. The Board contends that it decided that four or five years of closure was sufficient to establish that the nonconforming use had been discontinued. In addition, the Board notes that Al-Khatib failed to present any evidence indicating that the prior

owner had tried to continue the operation in any way.

{¶ 24} In response, Al-Khatib notes that no dispute existed about the fact that the prior owner had stopped operating the store because of illness. He further argues that the trial court correctly held that illness preventing a property owner from continuing operations is not a voluntary discontinuance of a nonconforming use.

{¶ 25} Article 36 of the Harrison Township Zoning Resolution ("HTZR") deals with existing and nonconforming uses of property.[1] A " 'nonconforming use' is a 'term of art.' This term is employed to designate a use of property which was lawful prior to the enactment of a zoning ordinance and which use may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions." *C.D.S., Inc. v. Village of Gates Mills*, 26 Ohio St.3d 166, 168, 497 N.E.2d 295 (1986).

{¶ 26} Subsection 3605.01 of the HTZR recognizes the validity of non-conforming uses and allows them to continue "subject to the restriction of Subsection 3605.02 through 3605.09." HTZR, p. 234. The restrictions in Subsection 3605.08, which is titled "Discontinuance," state that:

---

[1] The HTZR can be found at https://www.harrisontownship.org/DocumentCenter/ View/123/Harrison-Township-Zoning-Resolution-PDF?bidId= (accessed March 31, 2022). The HTZR was amended on February 21, 2021, after Al-Khatib's application but before the March 8, 2021 board hearing. Notably, the parties did not attach any part of the HTZR to their trial or appellate court briefs, nor have they mentioned any possible amendments. Instead, they simply quote from Subsection 3605.08 of the zoning resolution.

The township website does not contain prior versions of the HTZR. Since the wording the Board has quoted in its briefs corresponds with the February 21, 2021 version of Subsection 3605.08 posted on the website, we assume this is the appropriate version. *Compare* Board's Brief (July 29, 2021), p. 8 and Appellant's Brief (Jan. 25, 2022), p. 5-6. Alternatively, we assume the current language does not differ in any substantive way from the prior version.

A. Discontinuance of nonconforming use of land: In the event that operation of a nonconforming use of land is voluntarily discontinued for a period of two (2) years, such nonconforming use shall not thereafter be reestablished and any subsequent use or occupancy of such land shall conform to the regulations of the district in which it is located.

B. Discontinuance of nonconforming use of buildings or structures: In the event that operation of a nonconforming use of all or part of a building or other structure is voluntarily discontinued for a period of two (2) years, such nonconforming use shall not thereafter be reestablished, and any subsequent use or occupancy of such building or other structure shall conform to the regulations of the district in which it is located.

C. When any lawful nonconforming use of any structure or land in any zoning district has been changed to a conforming use, it shall not thereafter be changed back to any nonconforming use.

HTZR at p. 238.

**{¶ 27}** In reversing the Board's decision, the trial court noted that the HTZR does not define "voluntary."   The court then found that "an illness that prevents the owner from continuing his use of the property is not a reasonable expectation of a _voluntary_ nonconforming use."   (Emphasis sic.)   Decision, Order, and Entry Reversing the Decision of the Board ("Order") (Oct. 14, 2021), p. 3.   In addition, the court rejected the Board's partial basis for upholding the certificate's denial (concern about drug activity at the property) because it was unsupported by any evidence.   _Id._

{¶ 28} "A township's authority to enact zoning ordinances is not inherent, nor does it derive from a constitutional provision. Rather, this authority is dependent upon a grant by the General Assembly." *Torok v. Jones*, 5 Ohio St.3d 31, 32, 448 N.E.2d 819, 821 (1983). "The authority of townships in Ohio to adopt local zoning regulations is derived from R.C. 519.02." *Bd. of Twp. Trustees of Bainbridge Twp. v. Funtime, Inc.*, 55 Ohio St.3d 106, 107, 563 N.E.2d 717 (1990). Thus, township zoning resolutions cannot conflict with the General Assembly's statutory commands. *Newbury Twp. Bd. of Trustees v. Lomak Petroleum (Ohio), Inc.*, 62 Ohio St.3d 387, 583 N.E.2d 302 (1992), paragraph one of the syllabus; *Meerland Dairy L.L.C. v. Ross Twp.*, 2d Dist. Greene No. 2007-CA-83, 2008-Ohio-2243, ¶ 7.

{¶ 29} The language in HTZR Subsection 3605.08 is consistent with R.C. 519.19, which is part of R.C. Chap. 519 (governing township zoning). Specifically, R.C. 519.19 provides that if a nonconforming use is "voluntarily discontinued for two years or more," future uses will have to comply with the zoning provisions in R.C. 519.02 to R.C. 519.25. Like the HTZR, R.C. 519.19 does not define the phrase "voluntarily discontinued."[2]

{¶ 30} The issue here is not with the word "discontinued," as there is no dispute that Bud had not operated the grocery for several years. The question is over the meaning of the word "voluntarily" and how it should be applied.

{¶ 31} Both Al-Khatib and the Board have discussed *Bd. of Trustees of Williamsburg Twp. v. Kriemer*, 72 Ohio App.3d 608, 595 N.E.2d 945 (12th Dist.1991). In

---

[2] R.C. 713.15 (governing municipal zoning) and R.C. 303.19 (governing county zoning) have similar language concerning voluntary discontinuance of a non-conforming use. They also do not define the phrase.

that case, a junkyard owner became ill in 1984 and died in 1986. He did not renew the junkyard's license in 1985, nor did the administrator of his estate renew it thereafter. After the owner's death, the administrator sold the property in July 1987 to appellees, who intended to use the premises for a junkyard. However, they were not able to obtain a salvage yard license until July 27, 1989. *Id.* at 610 and 612.

{¶ 32} When the township trustees filed a complaint for an injunction, the trial court denied it. Subsequently, the court of appeals agreed, finding that the trustees had failed to meet their burden of showing voluntary discontinuance of the nonconforming use. *Id.* at 611. In this vein, the court noted the owner's work one to two hours a day after his illness, and the administrator's testimony that after the owner's death, "work continued at the junkyard and items were removed from it." *Id.* In view of these facts, the court said "there was no voluntary discontinuance on the part of Crowder or his estate. Although the junkyard usage may have become less frequent subsequent to Crowder's illness and death, the use was still continuous, albeit at a slower pace." *Id.* at 612.

{¶ 33} The fact that the business had no license for more than two years (1985 through 1987) casts some doubt on whether a junkyard business had operated. However, the court appears to have focused on its use as a "junkyard" rather than its use as a business. In any event, *Kriemer* is of little help here, because the court did not consider the meaning of "voluntarily," nor did it decide the case on that basis.

{¶ 34} As noted, the statutes and the HTZR do not define the word "voluntarily." "Words used by a legislative authority will be given their common meaning, unless otherwise clearly indicated." *In re Appropriation for Hwy. Purposes of Land of Seas*, 18

Ohio St.2d 214, 249 N.E.2d 48 (1969), paragraph one of the syllabus. *Accord In re Civ. Serv. Charges & Specs. Against Piper*, 88 Ohio St.3d 308, 310, 725 N.E.2d 659 (2000).

{¶ 35} "Voluntary" is defined as "proceeding from the will or from one's own choice or consent." *See* https://www.merriam-webster.com/dictionary/voluntarily (accessed April 1, 2022).[3] Based on this common meaning, we cannot conclude that the trial court's interpretation of the zoning resolution was unreasonable. An illness is not a matter of choice.

{¶ 36} In *Roth v. Steyer*, 3d Dist. Seneca No. 13-89-42, 1990 WL 209771 (Dec. 19, 1990), the appellee purchased a property that had been used as a junkyard. He was denied a permit to continue this use because the nonconforming use had been discontinued for two years. *Id.* at *1. In that case, the prior owner had died, and the probate court administering the estate had ordered the junkyard to be closed. The trial court concluded that "the more than two year lapse in use of the former Huff premises resulted from imposition of the Probate Division order of closure and, hence, was not the voluntary discontinuation or abandonment of the non-conforming use required by R.C. of 519.19 * * *." *Id.*

{¶ 37} On appeal, the trial court's judgment was affirmed. The court of appeals reasoned that "[d]iscontinuance of a non-conforming use for a period of two years must be voluntary, that is, discontinued by the owners [sic] free will and option rather than circumstances beyond ones [sic] control." *Id.* at *2, citing *City of Bowling Green v. Sarver*, 9 Ohio App.3d 279, 282, 459 N.E.2d 907 (6th Dist.1983).

---

[3] "Voluntary" is the adjective form of the word; "voluntarily" is the adverb form. https://www.thefreedictionary.com/voluntarily (accessed April 1, 2022).

{¶ 38} As noted, illness is not a voluntary act. The Board argues, however, that while Bud had no choice in whether he became ill, he could have done other voluntary acts, like hiring someone to run the store or selling it. Appellant's Brief, p. 6-7. However, there was no evidence about this point.

{¶ 39} "Courts have held that 'to show a voluntary discontinuance of a nonconforming use, a party opposing the use must demonstrate that there has been a manifest intention to abandon the nonconforming use.' " *Verbillion v. Enon Sand & Gravel, LLC*, 2021-Ohio-3850, 180 N.E.3d 638, ¶ 154 (2d Dist.), quoting *Kriemer*, 72 Ohio App.3d at 612, 595 N.E.2d 945. " 'Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon.' " *Id.*, quoting *Davis v. Suggs*, 10 Ohio App.3d 50, 52, 460 N.E.2d 665 (12th Dist.1983).

{¶ 40} In *Verbillion*, we found affirmative evidence of abandonment of a nonconforming use of property as a mine, beyond non-use, because the prior landowners "failed for more than two years to continue using the property for surface mining, classified the property as an 'abandoned quarry,' and did not attempt to obtain a mining permit for it. Accordingly, there was affirmative evidence of abandonment beyond non-use." *Id.* at ¶ 155. There is no such affirmative evidence here.

{¶ 41} The Board also argues that the trial court improperly substituted its judgment for that of the Board. According to the Board, its decision was supported by reliable, probative, and substantial evidence, and the trial court acted improperly by

considering public input. We have already concluded that the trial court's interpretation was not unsound and that no affirmative evidence showing manifest intent to abandon is in the record.

**{¶ 42}** It is true that the trial court mentioned that residents in the area supported the store and that no testimony supported the Board's concern about drug activity. Order at p. 3. These facts are not relevant to the issue of voluntary discontinuance, but they do show that the Board's decision was not based on appropriate factors. Like the trial court, we have reviewed the hearing transcript, and the motion to uphold the administrator's decision was directly based on a board member's statement that a store would be "potentially harmful to the community." Tr. at p. 39. However, this had nothing to do with whether the prior owner of the property had voluntarily discontinued the nonconforming use. And, again, *no evidence* was presented at the hearing on this point. Even if it had been, such evidence would have been irrelevant to the issue before the Board.

**{¶ 43}** The Board acknowledges that it had the burden to establish abandonment of a nonconforming use. Appellant's Brief at p. 10. However, the Board argues that public policy disfavors nonconforming uses and in situations involving long periods, discontinuance of a nonconforming use should be found.

**{¶ 44}** Tension always exists between property rights and ordinances restricting property use. *E.g. City of Kettering v. Lamar Outdoor Advertising, Inc.*, 38 Ohio App.3d 16, 17, 525 N.E.2d 836 (2d Dist.1987) ("since zoning is a limitation on the individual's right to use his property as he sees fit, zoning laws must be such that the good to the

public outweighs the detriment to the individual's rights"). It is also true that "[z]oning ordinances contemplate the gradual elimination of nonconforming uses within a zoned area, and, where an ordinance accomplishes such a result without depriving a property owner of a vested property right, it is generally held to be constitutional." *State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 10, quoting *City of Akron v. Chapman*, 160 Ohio St. 382, 386, 116 N.E.2d 697 (1953).

**{¶ 45}** However, this case is not about the constitutionality of a zoning statute or ordinance. It concerns the application of a zoning resolution to a particular set of facts. In light of the above discussion, we do not find an abuse of discretion on the part of the trial court. We also cannot find that the trial court improperly substituted its judgment for that of the Board. Accordingly, the Board's sole assignment of error is overruled.

### III.   Conclusion

**{¶ 46}** The judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Gary C. Schaengold
Scott D. Phillips
Amelia N. Blankenship
Hon. Dennis J. Adkins